### EWING *v.* KLATT.

1. EVIDENCE—WHEN PRESUMPTION RAISED THAT LETTER WAS RE-
CEIVED BY ADDRESSEE.

   Proof that a letter properly addressed was mailed, with
   full postage paid, raises a rebuttable presumption that it
   was received by the addressee, and when the original can-
   not be produced a proven copy is admissible to sustain
   the presumption.[1]

2. SAME—SECONDARY EVIDENCE—COPY OF LETTER NOT ADMISSIBLE
UNLESS ESSENTIAL PRELIMINARIES SHOWN.

   In the absence of proof that a letter was properly
   stamped, full postage paid, or properly addressed, or that
   it was ever received or knowledge of its contents had, no
   presumption of its receipt arises, and under such circum-
   stances there was no error in excluding a purported copy.[2]

3. APPEAL AND ERROR—REFUSAL TO STRIKE TESTIMONY AFTER DE-
CLARING IT INCOMPETENT NOT REVERSIBLE ERROR.

   Refusal of the trial court to strike out testimony after
   declaring it hearsay and incompetent in the presence of
   the jury cannot be said, under the proofs in this case,
   to be so prejudicial as to require reversal.[3]

Error to Wayne; Moinet (Edward J.), J., presid-
ing. Submitted January 19, 1926. (Docket No.
16.) Decided July 22, 1926.

Assumpsit by Glenn W. Ewing against William F.
Klatt and another for services rendered. Judgment
for plaintiff. Defendants bring error. Affirmed.

*Wurzer & Wurzer,* for appellants.

*Joslyn, Finkelston, Lovejoy & Chilson,* for appellee.

STEERE, J. This is an action in assumpsit brought
by plaintiff to recover for labor and material per-

---

[1]Evidence, 22 C. J. §§ 36, 1323; [2]Id., 22 C. J. § 1112; [3]Appeal and
Error, 4 C. J. § 2981.

Presumption as to receipt of letter sent through the mail, see
note in 49 L. R. A. (N. S.) 458.

Sufficiency of evidence to show that letter was mailed, see
note in 25 A. L. R. 9.

formed and furnished during April, 1923, in remodeling and repairing a theater building on East Grand Boulevard, Detroit, known as the Oriole Terrace. The major issue involved was whether plaintiff performed the labor and furnished the material for defendants or their tentative lessee of the building, named Stewart. The case is essentially one of facts upon which the testimony of the respective sides is in sharp conflict. It was tried by jury, resulting in a verdict and judgment in favor of plaintiff for $1,505.45, including interest.

Defendants' various assignments of error are all directed to rulings of the court in admission and rejection of testimony. . Some of them have apparently been abandoned while others call for no serious consideration. Plaintiff was then 32 years of age, a carpenter by trade, engaged in contracting and building as his father had formerly been. Defendant William F. Klatt was president of defendant Klatt Land Company which owns the Oriole Terrace. When asked who were the stockholders of the Klatt Land Company he answered that he himself was, but on further interrogation named his wife, Ida Klatt, and L. C. Wurzer as stockholders also.

At the time this work was done Klatt had tentatively leased the theater building to Stewart and given him temporary possession on his assurance, as Klatt testified, that the Marigold Gardens, of Chicago, were backing him and he would be financially able to pay the rent, and otherwise comply with the requirement of his tentative lease. Under that condition of affairs, plaintiff was engaged to do certain remodeling in the theater building which involved the installation of some electrical equipment and other special work.

In outline, plaintiff's evidence is that Klatt called him by phone, asking if he could do some work on the Oriole Terrace, a building on which plaintiff had worked before; that Klatt told him Stewart was his

new manager and he could make arrangements with him for doing the work, as "anything I talked with Mr. Stewart would be perfectly satisfactory." Plaintiff met Stewart at the theater building, and, after some discussion as to what was desired and the prices for certain work, he suggested that the contemplated alterations were such as to make a definite contract covering amount and price difficult, and proposed that it be done on the basis of cost of labor and material plus 10%, which Stewart agreed to, and then wrote a memorandum proposal to that effect upon some stationery of his father's, which he happened to have, and which Stewart accepted and signed.  He thereupon proceeded with his men and material to make the alterations required, until stopped by Klatt.  His bill for labor and material then amounted to $1,368.59; $300 of this was for 5,000 square feet of floor sanding done by a floor man named Walch for six cents a square foot, $122.37 for work and material by the Service Electric Company, and $38 for some painting and decorating.  The balance of the bill covered other material and labor.  All these he kept itemized and charged on his books to Klatt, who was there almost daily while the work was in progress watching what was done, consulting at times with plaintiff, told him he was going to have his office upstairs on the west side of the front, took him up there to lay it out with him and gave other directions in regard to the work, but never while it was in progress suggested he was not responsible for it.  When Klatt sent notice to quit before he had completed all that was intended, plaintiff went to see him about it, and, as plaintiff testified:

"He said he was having some trouble and asked me to pull off of the job until the trouble was straightened out.  *  *  *  And he told me as soon as it was straightened out he would let me know to complete the work."

Plaintiff then took his men and material and left for another job. About two weeks later he gave Klatt his bill for the work done and material furnished on that job, and explained it. After looking it over, Klatt said, "as soon as the building was rented and straightened up that he would pay it." Other witnesses who worked there told of times when Klatt gave directions as to the work both to them and plaintiff.

Klatt positively denied in detail any assumption of liability by word or conduct as had been shown by plaintiff's evidence, and testified that he "never had any business relations with Mr. Ewing, the plaintiff, in this case, nor his father, * * * positively had no talk with him (plaintiff) at all," never told him Stewart was his manager, that Stewart was negotiating for a lease and they would not let him in the building until he advanced the rent, "but his promises were so good that we just let him go along until finally we just wouldn't let him open up. * * * Mr. Stewart didn't do as he agreed to do. We just simply locked it up." He admitted he was up there while plaintiff was working on the remodeling, saying "it was to my interest to go in there, and just during this time that they were arranging for those alterations and I went each day or so." While there he had "quite a talk" with plaintiff and told him, "I thoroughly want you to understand that you are not doing this for W. F. Klatt or the Klatt Land Company. * * * his answer was that he was thoroughly satisfied as the Marigold Gardens of Chicago were back of Mr. Stewart," and he then wrote a letter to W. F. Ewing, plaintiff's father, notifying him "as per our conversation with your son * * * that the Klatt Land Company or Wm. F. Klatt would not be responsible for any alterations, labor or material used at the Oriole Terrace." Plaintiff positively denied

any such conversation with him or knowledge of any such letter.

At the trial plaintiff and his counsel were notified by the defense to produce the letter and on their denying possession or knowledge of it Klatt identified a writing as a true copy of the letter he had addressed and mailed to plaintiff's father. This was offered in evidence. On objection to its admission by plaintiff's counsel, the court excluded it on "numerous grounds," amongst others that it was not addressed to plaintiff and was self-serving. This ruling is earnestly urged in defendants' brief as reversible error.

Unquestionably, the general rule obtains that proof that a letter properly addressed was mailed with full postage paid raises a rebuttable presumption that it was received by the addressee, and when the original cannot be produced a proven copy is admissible to sustain the presumption. But such secondary evidence to establish the presumption is only competent when all essential preliminary facts entitling it to admission are shown. Defendant has not only failed to show that the letter was properly stamped, or full postage paid, but has shown it was not addressed to plaintiff. There is no proof plaintiff actually received it or had knowledge of its contents, and he testified he did not. No presumption of receipt arises under such circumstances, and we see no occasion to consider the arguments of counsel on either side on other theories.

The following ruling is also stressed as reversible error. Plaintiff had been cross-examined about his going down to see Stewart at the Wolverine hotel "after this was all over," in which he had said Stewart called him to come down as "he possibly might arrange the matter so that I could get my money," and told of some things he then first learned as to the relations between Stewart and Klatt. On redirect-examination he was asked and answered:

"*Q.* What did he say about the job?
"*A.* Well, he told me that Mr. Klatt was liable and that he would come to testify to it."

The court denied defendants' motion to strike this answer out, saying in reply to counsel's contention that such a conversation between plaintiff and Stewart could not be binding on defendants.

"The difficulty is you went into that conversation yourself. That is the only reason I am permitting it here. It is incompetent and hearsay as to the defendant here, but I only permit it because you went into it yourself."

The fact that defendants' counsel had examined the witness as to his interview with Stewart at the Wolverine hotel did not make that answer competent. Had that question been asked and so answered during the cross-examination it might properly have been stricken out on the examiner's motion. But we cannot conclude from an examination of this entire record that the court's inadvertence in not striking out the answer after declaring it hearsay and "incompetent" in the presence of the jury, was such prejudicial error as to result in a miscarriage of justice. The undisputed evidence showed and the jury knew that hostilities between them had resulted in Klatt putting Stewart out of the theater building and locking him out. Hearsay evidence of Stewart's opinion as to Klatt's liability under those circumstances when at once pronounced incompetent by the court cannot be affirmatively magnified to prejudicial error demanding reversal. His statement that "he would come to testify to it," if made, had no evidential significance and was further nullified by the fact he did not come.

Defendants' other assignments of error present no questions requiring discussion. They have been examined and are not found tenable. The case presented but the one controlling question of fact depending for its solution on the credibility of witnesses who

had first-hand knowledge of the fact.  A liberal range was given to their direct and cross-examinations and that issue was fairly submitted to the jury in a clear, plain charge of which no complaint is made.

No reversible error is found, and the judgment will stand affirmed.

BIRD, C. J., and SHARPE, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.