ALAN CUSTOM HOMES, INC v KROL

Docket No. 237138. Submitted March 5, 2003, at Detroit. Decided May 8, 2003, at 9:00 A.M.

Alan Custom Homes, Inc., brought an action under the Construction Lien Act (CLA), MCL 570.1101 *et seq.*, in the Oakland Circuit Court, Phillip J. Jourdan, J., against Kenneth and Karen Krol, to foreclose on a construction lien against the defendants' residence after the defendants barred the plaintiff's workers from finishing construction of the residence and terminated the parties' contract. After a bench trial, the trial court entered a judgment in favor of the plaintiff for $57,512.62. The defendants appealed.

The Court of Appeals *held*:

1. The defendants' motion for summary disposition was properly denied because the plaintiff substantially complied with MCL 570.1110(8), which requires a contractor to provide a sworn statement to the owner before recording a claim of lien, by providing unverified statements to the title company during construction, and by providing the defendants with a verified sworn statement before the hearing on the motion for summary disposition.

2. The trial court properly dismissed the defendants' counterclaim for breach of contract because the defendants could not prove any damages (the cost of completing the home) resulted from the plaintiff's alleged breach of the contract because the plaintiff would have completed the project had the defendants not locked the plaintiff out.

3. The trial court was not restricted to limiting the amount of the plaintiff's lien to the difference between the original, written-contract price and the amount the defendants actually paid the plaintiff. The requirement in MCL 570.1114 that there be a written contract, and that any amendments or additions to the contract be in writing, must be strictly construed as contrary to the CLA's broad definition of contract. The plaintiff had a written contract, and the written change orders and statements to the defendants documenting the oral contract amendments satisfied MCL 570.1114. Furthermore, an addendum to the parties' contract specifically stated that the defendants were responsible for expenses exceeding the plaintiff's estimates. Thus, the plaintiff's claim of lien was sup-

ported by a written contract as required by MCL 570.1113, and because the lien-award amount was not in excess of the difference between the amended contract price and the amount the defendants paid the plaintiff, it complied with MCL 570.1107, which prohibits liens exceeding the amount of the contract less payments made on the contract.

Affirmed.

1. LIENS — CONSTRUCTION LIEN ACT — SWORN STATEMENTS — SUBSTANTIAL COMPLIANCE.

As a notice provision, the requirement that a contractor provide a sworn statement to an owner before filing a claim of lien only requires substantial compliance (MCL 570.1110[8] and MCL 570.1302[1]).

2. LIENS — CONSTRUCTION LIEN ACT — SWORN STATEMENTS — SUBSTANTIAL COMPLIANCE.

A contractor substantially complied with the requirement to provide a sworn statement to an owner before filing a claim of lien where the contractor gave unverified statements to a title company to obtain draws on the construction contract and later provided a verified sworn statement to the owner after the lien and an action to foreclose on the lien were filed, but before the hearing on the owner's motion for summary disposition of the action was held (MCL 570.1110[8]).

*David R. Kratze* for the plaintiff.

*Powers, Chapman, DeAgostino, Meyers & Milia, P.C.* (by *Michael S. Holmes*), for the defendants.

Before: HOEKSTRA, P.J., and SMOLENSKI and FORT HOOD, JJ.

SMOLENSKI, J. In this case involving breach of contract and a construction lien, defendants Kenneth and Karen Krol appeal as of right the judgment entered in favor of plaintiff Alan Custom Homes, Inc., following a bench trial. Plaintiff was awarded $42,763 plus interest, fees, and costs, for a total judgment of $57,512.62 against defendants. We affirm.

On October 24, 1998, defendants and plaintiff entered into a cost-plus contract[1] for plaintiff to build a custom home for defendants, at a cost of $262,466. Construction was delayed by waiting for permits, inclement weather, problems with draws, and changes in design. On January 4, 2000, defendants locked plaintiff's workers out of the house, alleging that plaintiff had breached their contract by not completing the house in a timely manner. On January 18, 2000, defendants formally terminated plaintiff's services by letter. At that time, the house was ninety-five percent complete. Defendants acted as a general contractor to complete the house themselves.

On appeal, defendants claim that the trial court erred by denying their motion for summary disposition regarding plaintiff's claim for foreclosure of the construction lien. We disagree. This Court reviews a trial court's grant or denial of summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Likewise, this Court reviews questions of statutory construction de novo. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 62; 642 NW2d 663 (2002).

The trial court apparently considered both MCR 2.116(C)(8) and (C)(10) as grounds for its summary-disposition decision. A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which

---

[1] A cost-plus construction contract is "[o]ne which fixes the amount to be paid the contractor on a basis, generally, of the cost of the material and labor, plus an agreed percentage thereof as profits. Such contracts are used when costs of production or construction are unknown or difficult to ascertain in advance." Black's Law Dictionary (6th ed).

relief may be granted. *Spiek, supra* at 337. A court must accept all factual allegations in the pleadings in support of the claim as true, as well as any reasonable inferences or conclusions that can be drawn from the facts, and construe those facts in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. *Spiek, supra* at 337. When deciding a motion under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999).

Resolution of this issue requires us to interpret § 110 of the Construction Lien Act (CLA), MCL 570.1101 et seq. In *Vugterveen Sys, Inc v Olde Millpond Corp*, 454 Mich 119, 121; 560 NW2d 43 (1997), our Supreme Court discussed the purpose and interpretation of the CLA and stated that the act "was intended to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs." The Court further stated that the act is to be "liberally construed to effectuate these purposes." *Id.*

MCL 570.1110(8) states:

> If a contractor fails to provide a sworn statement to the owner or lessee before recording the contractor's claim of lien, the contractor's construction lien is not invalid. However, the contractor is not entitled to any payment, and a complaint, cross-claim, or counterclaim may not be filed to enforce the construction lien, until the sworn statement has been provided.

Defendants contend that this provision bars plaintiff's foreclosure claim.

While a strict reading of MCL 570.1110(8) supports defendants' argument that plaintiff's claim is barred, only "substantial compliance" with this provision is required. In *Northern Concrete Pipe, Inc v Sinacola Cos-Midwest, Inc*, 461 Mich 316; 603 NW2d 257 (1999), our Supreme Court recently addressed when it is appropriate to use the CLA's "substantial compliance" provision.[2] The Court recognized that in *Vugterveen, supra*, it stated that the "substantial compliance" provision applied to part one of the CLA, but noted that *Vugterveen* did not examine whether the provision was applicable to "every word of every provision within part one." *Id.* at 321 n 15 (internal citations omitted). Therefore, the Court in *Northern Concrete Pipe* instructed that

> [t]he scope of a statutory "substantial compliance" provision requires an analysis, on a case-by-case basis, of the following logically relevant factors among others: the overall purpose of the statute; the potential for prejudice or unfairness when the apparent clarity of a statutory provision is replaced by the uncertainty of a "substantial compliance" clause; the interests of future litigants and the public; the extent to which a court can reasonably determine what constitutes "substantial compliance" within a particular context; and, of course, the specific language of the "sub-

---

[2] The "substantial compliance" provision of the CLA, MCL 570.1302(1), states:

> This act is declared to be a remedial statute, and shall be liberally construed to secure the beneficial results, intents, and purposes of this act. Substantial compliance with the provisions of this act shall be sufficient for the validity of the construction liens provided for in this act, and to give jurisdiction to the court to enforce them.

stantial compliance" and other provisions of the statute. [*Id.*
at 321-322.]

While *Northern Concrete Pipe* dealt with the applica-
bility of the "substantial compliance" provision to the
filing requirement of MCL 570.1111(1), the Supreme
Court noted that application of the "substantial com-
pliance" provision was well suited to notice provi-
sions where the purpose of the requirement is to
ensure that notice was received, citing *Vugterveen's*
application of the "substantial compliance" provision
to the notice requirement in MCL 570.1109. *Id.* at 323.
Likewise, we hold that the CLA's "substantial compli-
ance" provision is applicable to the notice require-
ment in MCL 570.1110(8).

In this case, application of the CLA's "substantial
compliance" provision supports plaintiff's contention
that its provision of unverified statements to the title
company during construction and of a verified sworn
statement to defendants before the summary-disposi-
tion hearing satisfied the notice requirement of MCL
570.1110(8). The purpose of the contractor providing
the property owner with a sworn statement is "to
enable the homeowner 'to retain out of any money
due or to become due to the contractor an amount
sufficient to pay the subcontractors . . . .' " *ERB Lum-
ber, Inc v Gidley*, 234 Mich App 387, 399 n 5; 594
NW2d 81 (1999), quoting *Nurmi v Beardsley*, 275
Mich 328, 329; 266 NW 368 (1936). That a statement is
not sworn before a notary does not defeat the notice
purpose of the statement. It still gives the owner
notice of who the subcontractors are and the amount
owing to each for the materials and labor supplied.

Therefore, we find that the unverified statements
plaintiff gave to the title company to obtain draws

substantially complied with the statutory notice requirement of MCL 570.1110(8). Moreover, we find that although plaintiff filed the present cause of action, including its claim for foreclosure of the lien, before giving defendants a verified sworn statement, plaintiff's provision of the verified sworn statement to them in February 2001, before the summary-disposition hearing was held,[3] also constituted substantial compliance with MCL 570.1110(8).

In addition, plaintiff was entitled to maintain a cause of action against defendants for breach of contract, independent of any claim for foreclosure of the lien. MCL 570.1302(2).[4] Although plaintiff's inclusion of the lien-foreclosure claim in plaintiff's complaint and first amended complaint was premature under MCL 570.1110(8), the trial court could have allowed plaintiff to amend the complaint to include the lien-foreclosure claim after the verified sworn statement was delivered to defendants, but *before* the summary-disposition motion was heard. Because the claim was properly before the trial court when the summary-disposition motion was heard, we hold that the trial court did not err in denying defendants' motion under MCR 2.116(C)(8). We further hold that because there were genuine issues of material fact regarding whether defendants requested a sworn statement from plaintiff at an earlier date, summary disposition was properly denied under MCR 2.116(C)(10).

---

[3] We note that defendants' motion for summary disposition was filed one month before plaintiff delivered the sworn statement to defendants, but that the motion hearing was held three months after the sworn statement was delivered.

[4] MCL 570.1302(2) states, "[t]his act shall not be construed to prevent a lien claimant from maintaining a separate action on a contract."

Defendants next contend that the trial court erred by dismissing their counterclaim for breach of contract without evaluating whether plaintiff's failure to provide accountings to them was a material breach. Again, we disagree. This Court reviews a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo. MCR 2.613(C); *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000).

A careful reading of the trial court's findings indicates that the court did not find it necessary to decide whether plaintiff materially breached the contract before defendants locked plaintiff out, because defendants did not prove any damages from plaintiff's alleged breach. The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach. *In re F Yeager Bridge & Culvert Co*, 150 Mich App 386, 401; 389 NW2d 99 (1986). Here, the trial court found that plaintiff did not cause defendants' damages, i.e., the cost of completing the project, because plaintiff would have completed the project had defendants not locked plaintiff out, and defendants would have had to pay plaintiff the cost of completion. Therefore, defendants' counterclaim for breach of contract was properly dismissed.

Defendants also argue that the trial court clearly erred in upholding plaintiff's claim of lien where the claim was excessive and made in bad faith. However,

this issue was not addressed by the trial court and is not properly before this Court. *Fast Air, Inc v Knight*, 235 Mich 541, 549; 599 NW2d 489 (1999). Regardless, no bad faith is evident from the record, and the trial court reduced to the proper amount the lien-claim amount in excess of the actual damages. *Tempo, Inc v Rapid Electric Sales & Service, Inc*, 132 Mich App 93, 104; 347 NW2d 728 (1984). Therefore, defendants' argument is without merit.

Finally, defendants claim the trial court erred by not restricting the amount of the lien claim to the difference between the original price in the written contract and the amount defendants actually paid plaintiff. In connection with that argument, defendants also claim that the trial court erroneously awarded plaintiff damages for "extras" not included in the contract. We disagree. This Court reviews the trial court's determination of damages following a bench trial for clear error. *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002).

Defendants rely on MCL 570.1107 and MCL 570.1114 to support their argument that plaintiff's claim of lien is restricted to the difference between the written-contract price and the amount defendants already paid plaintiff. MCL 570.1107 states, in pertinent part:

> (1) Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property shall have a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property, as described in the notice of commencement provided for by section 108 or 108a, the interest of an owner who has subordinated his or her interest to the mortgage for the improvement of the real property, and the interest of an owner who has required the improvement. *A construction*

*lien acquired pursuant to this act shall not exceed the amount of the lien claimant's contract less payments made on the contract.* [Emphasis added.]

MCL 570.1114 states, in pertinent part:

A contractor shall not have a right to a construction lien upon the interest of any owner or lessee in a *residential* structure unless the contractor has provided an improvement to the residential structure *pursuant to a written contract* between the owner or lessee and the contractor *and any amendments or additions to the contract also shall be in writing.* [Emphasis added.]

The reference in MCL 570.1114 to a written-contract requirement regarding liens on residential structures is contrary to the CLA's broad definition of contract.[5] In interpreting the term "written contract" in MCL 570.1114, we are guided by the following principles. Omission of a phrase in one portion of a statute that is included in another should be construed as intentional. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). Also, this Court assumes that every word used in a statute has meaning, and, therefore, this Court must avoid any construction that would render a statute or any part of it surplusage or nugatory. *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 574; 592 NW2d 360 (1999). Therefore, we conclude that the term "written contract" in MCL 570.1114 must be strictly construed.

---

[5] MCL 570.1103(4) states:

"Contract" means a contract, of whatever nature, for the providing of improvements to real property, including any and all additions to, deletions from, and amendments to the contract.

Furthermore, as plaintiff points out, the requirement of a written contract, and written amendments thereto, in MCL 570.1114 does not include a signature requirement. Plaintiff submitted written change orders and statements to defendants documenting the orally agreed to contract amendments. Defendants did not object to these changes and accepted their benefits. Therefore, the requirement of a writing for additions and amendments to a written contract was fulfilled.

Defendants also assert that their contract with plaintiff required that any modifications be in writing and executed by all the parties. The contract stated:

> It is further agreed that this agreement and any written amendments or addenda attached hereto contain all the representations and obligations of the respective parties and any modifications or changes herein shall be made in writing and executed by all the parties to this agreement otherwise the same shall not be binding upon the other party hereto.

But the addendum to the contract, executed at the same time as the contract, stated, "[i]f the actual cost of any individual line item(s) shall exceed the estimate provided on this list by Seller, these additional costs shall be the sole responsibility of the purchaser." Defendants do not dispute that many of the cost overruns were due to their choice of fixtures and changes in design. Therefore, the written addendum, executed by both parties at the same time as the original contract, obligated defendants to pay for the expenses over the allowances estimated by plaintiff. Accordingly, plaintiff's claim of lien was supported by a written contract, as required by MCL 570.1114. Further, because the lien-award amount was not in

excess of the difference between the *amended* contract price and the amount defendants already paid plaintiff, it complied with MCL 570.1107.

In addition, we hold that the award of $17,000 for "extras" was not clearly erroneous inasmuch as the trial court indicated that it had "considered all the evidence relating to those 'extras'" and "determined that the preponderance of the evidence supports the balance of $17,000 worth of 'extras' after credits to defendants." It appears that the trial court "was aware of the issues in the case and correctly applied the law." *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995). Further, because plaintiff claimed $28,095 in "extras," and defendants claimed that all the "extras" were included in the original contract price, the damage award was within the range of the evidence presented. *Id.* at 177.

Affirmed.