# STATE OF MICHIGAN

# COURT OF APPEALS

HANTZ FINANCIAL SERVICES, INC.,

        Plaintiff/Appellant-Cross Appellee,

v

CHEMICAL BANK,

        Defendant/Appellee-Cross
        Appellant.

UNPUBLISHED
October 30, 2014

No. 314923
Midland Circuit Court
LC No. 09-005872-CZ

Before: FITZGERALD, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

This case arises from the embezzlement of approximately $2.6 million from plaintiff's clients by its former employee, Michael Laursen. Plaintiff appeals as of right from a trial court order finding that defendant's failure to exercise ordinary care when accepting checks from Laursen for deposit into a checking account at Chemical Bank contributed to plaintiff's loss to the extent of $98,945.95. Defendant cross-appeals from the same order. For the reasons stated below, we reverse.

## I. STATEMENT OF FACTS

Plaintiff employed Laursen as an investment representative from 1999 until 2008. In 2003, Laursen launched a scheme to embezzle funds primarily by having clients write investment checks intended for plaintiff to "HFS," then taking the checks and depositing them into an account at Chemical Bank opened in the name of "Henry Firearm Services," also "HFS," and withdrawing the funds for personal use. After the embezzlement was discovered, plaintiff filed suit against defendant alleging conversion under the Uniform Commercial Code (UCC), MCL 440.3420, failure to exercise ordinary care, MCL 440.3404, statutory conversion, MCL 600.2919a, common-law conversion, and negligence. A jury found that plaintiff suffered $989,456.50 in damages, that defendant failed to exercise ordinary care in depositing the checks at issue, and that defendant proximately caused plaintiff's damages. However, because the court wrongly instructed the jury to allocate fault according to the comparative fault system of Michigan's Tort Reform Act rather than the UCC scheme specifically related to the conversion of instruments, the jury attributed fault to plaintiff (30%), to Laursen (30%), to Laursen's wife (30%), to plaintiff's investors (3%), and to defendant (7%). The jury returned a verdict against

-1-

defendant for $69,262.16. When the legal error was discovered, plaintiff moved for entry of judgment for the full amount of its damages.

The trial court denied plaintiff's motion, vacated the jury's verdict, and ordered a new trial. The parties stipulated to a bench trial on the record created during the jury trial. By this point, the initial five charges had been reduced to two: UCC conversion, MCL 440.3420, and common-law conversion. After the bench trial, the trial court issued an opinion and order finding that defendant had failed to exercise ordinary care in accepting Laursen's checks for deposit, that defendant's failure had substantially contributed to plaintiff's loss, and that the extent of defendant's contribution to plaintiff's loss was $98,945.95.

## II. ANALYSIS

Plaintiff argues that the trial court erred in denying its motion for entry of judgment, vacating the jury's verdict, and ordering a new trial. We disagree. Plaintiff's motion for entry of judgment was essentially a motion for judgment notwithstanding the verdict (JNOV), and we review a trial court's ruling on a motion for JNOV de novo. *Attard v Citizens Ins. Co of America*, 237 Mich App 311, 322; 602 NW2d 633. We review a trial court's decision to grant a new trial for an abuse of discretion. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001). A trial court does not abuse its discretion if its decision falls within the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Citing *Johnson v Auto Owners Ins Group*, 202 Mich App 525; 509 NW2d 538 (1993), plaintiff argues that the remedy for the trial court's instructional error was to ascertain and achieve the intentions of the jury. *Johnson v Auto Owners Ins Group*, 202 Mich App 525, 528; 509 NW2d 538 (1993) (explaining that "[w]here the intention of the jury is ascertainable despite ambiguities in its verdict, the court may amend the verdict, correcting manifest errors of form, and sometimes matters of substance, to make it conform to the intention of the jury"). Here, plaintiff contends, the jury found that defendant failed to exercise ordinary care and proximately caused plaintiff's damages. Therefore, plaintiff asserts, the trial court should have disregarded the jury's inappropriate fault allocation and entered judgment for plaintiff in the full amount of the damages, plus interest and costs.

We do not think the trial court could have ascertained the jury's intention simply by disregarding the inappropriate fault allocation. It is true the jury found that defendant had proximately caused plaintiff's damages, and that plaintiff's damages amounted to $989,459.50. However, it is equally true that the jury's verdict clearly shows it did not intend to hold defendant liable in conversion for $989,459.50. The jury's answers to questions seven through ten of the jury verdict form indicate that the jury believed defendant had proved its defenses by a preponderance of the evidence, a finding that contradicts plaintiff's insistence that the jury considered and rejected defendant's affirmative defenses. Under the circumstances, it is impossible to conclude without speculation that a properly instructed jury would have rendered a $989,459.50 verdict against defendant. Under MCR 2.610(B)(1), the court's options were to allow the verdict to stand, enter the verdict plaintiff requested, or order a new trial. Because an error of law occurred in the proceedings, MCR 2.611(A)(1)(g), which may have resulted in plaintiff being significantly undercompensated, we do not find that the trial court abused its discretion by ordering a new trial.

Plaintiff next argues that the trial court erred by applying the UCC defenses of MCL 440.3404 and MCL 440.3405 to reduce the amount of the judgment against defendant. Because we find MCL 440.3405 applicable to the facts of this case, we disagree. We review questions of statutory interpretation and the applicability of a statute de novo. *Adams Outdoor Adver, Inc v City of Holland*, 463 Mich 675, 681; 625 NW2d 377 (2001). We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). A finding is clearly erroneous where, after reviewing the entire record, we are left with a definite and firm conviction that a mistake has been made. *Id*.

MCL 440.3404, the so-called "imposter" defense to UCC conversion, applies where an imposter induces a payor to issue a check to the imposter by impersonating the payee of the check or someone authorized to act on behalf of the payee, and stipulates that an endorsement made in the name of the payee is effective as that of the payee. MCL 440.3404(1). Because Michael Laursen was in fact what he purported to be—an investment planner with Hantz Financial Services—we find that the trial court clearly erred when it found this defense applicable. However, the trial court did not err in applying MCL 440.3405.

MCL 440.3405, also known as the "responsible employee" defense to UCC conversion, provides that where an employee with responsibilities as specified by the statute fraudulently endorses a check in the name of the payee, the endorsement is effective as that of the payee. MCL 440.3405(2). Among the specified responsibilities are those for processing "instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition." MCL 440.3405(1)(c). A check is considered endorsed in the name of the payee if the check, whether or not actually signed, "is deposited in a depositary bank to an account in a name substantially similar to the name of that person." MCL 440.3405(3)(*ii*).

Plaintiff argues that the responsible employee defense is inapplicable because Laursen was not an officer, did not serve in a managerial capacity, and had no authority to process or endorse checks on plaintiff's behalf. Plaintiff contends that the only authority Laursen had with respect to client checks was to receive them. We find, however, that the trial court did not err in its determination that Laursen was a responsible employee under MCL 440.3405. Laursen advised investors regarding whether to write their checks to plaintiff for deposit into a client trust account or to the product companies for other disposition. Once clients drafted their investment checks, Laursen was responsible for initiating the process that would end in their recordation in plaintiff's ledger and their dispatch to the appropriate account. The trial testimony of plaintiff's clients revealed the pivotal role Laursen had in determining when clients wrote checks, how many they wrote, to whom they wrote their checks, and what they did with third-party redemption checks. All of this establishes that Laursen did more than just "receive" checks.

The trial court heard conflicting expert testimony regarding whether "HFS" was "substantially similar" to Henry Firearm Services. Plaintiff's expert insisted that checks made out to acronyms generally fell outside the "substantially similar" concept, whereas defendant's experts testified that it was a reasonable commercial standard in the banking industry to accept checks payable to acronyms if the bank knew the customer well enough to determine that the check was acceptable. Because record evidence supports the trial court's finding that the checks

payable to "HFS" and deposited by Laursen into the account for Henry Firearm Services were deposited into an account with a substantially similar name, we find no clear error.

Defendant argues on cross-appeal that the trial court erred in admitting evidence of check transactions for which recovery was barred by the applicable statute of limitations, and in using those transactions as the basis for its finding that defendant had not exercised ordinary care with transactions occurring within the limitations period.

We review a trial court's evidentiary decisions for abuse of discretion. *Taylor v Kent Radiology*, 286 Mich App 490, 519; 780 NW2d 900 (2009). A trial court has not abused its discretion if its decision falls within the range of principled outcomes. *Maldonado*, 476 Mich at 388. We review the trial court's findings of fact for clear error, MCR 2.618(C), and its conclusions of law de novo. *Alan Custom Homes*, 256 Mich App at 512.

All relevant evidence is admissible unless constitutionally barred, barred by the Rules of Evidence or other rules adopted by the Michigan Supreme Court, or unless its probative value is substantially outweighed by the danger of unfair prejudice. MRE 402, 403. In the instant case, the trial court did not abuse its discretion by admitting evidence of check transactions outside the limitations period as background information to Laursen's scheme. *Campbell v Human Services Dep't*, 286 Mich App 230, 238; 780 NW2d 586 (2009). Of the approximately 125 checks Laursen deposited into his account with defendant, he deposited roughly 60 of these outside of the limitations period. Of these 60, the trial court admitted 14 with defined characteristics in order to provide background information regarding the extent and development of Laursen's scheme and defendant's opportunities to stop it.

Although the checks were relevant and admitted for a proper purpose, and the trial court sought to minimize prejudice to defendant by admitting just 14 of the 60 checks, we agree with defendant that the trial court improperly relied on those 14 checks from outside the limitations period to support its finding that defendant failed to exercise ordinary care within the limitations period.

With respect to the liability of the person paying or taking an instrument fraudulently endorsed by a "responsible employee," MCL 440.3405(2) stipulates the following:

> If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

According to the statute, two conditions must be met before a plaintiff may recover losses from the conversion of an instrument: (1) the defendant must have failed "to exercise ordinary care in paying or taking the instrument," and (2) that failure must have substantially contributed to the plaintiff's loss from the fraud. MCL 440.3405(2). Once these two conditions are met, the plaintiff may recover from the defendant to the extent defendant's failure to exercise ordinary care contributed to plaintiff's loss. MCL 440.3405(2).

In the instant case, the trial court found that defendant had failed to exercise ordinary care, but only with regard to accepting those 14 checks for which recovery was barred by the statute of limitations. With respect to the checks falling within the limitations period and for which plaintiff was seeking recovery, the court specifically stated that defendant had not failed to exercise ordinary care. In other words, defendant exercised ordinary care in its transactions of those checks for which plaintiff was seeking recovery. Therefore, under the plain language of MCL 440.3405(2), plaintiff is not entitled to recover for any of the checks defendant accepted during the statutory period because defendant exercised ordinary care in accepting those checks.

Plaintiff relies on *Campbell* to argue that the 14 checks from outside the limitations period can support the court's finding that defendant failed to exercise ordinary care within the limitations period. However, although we concluded in *Campbell* that acts occurring outside the limitations period may be admitted as background evidence subject to Michigan's rules of evidence and the trial court's discretion, we specifically stated that "a plaintiff cannot *recover* for an injury suffered as a result of a prior act occurring outside the limitations period." *Campbell*, 286 Mich App at 238. According to the trial court's findings, plaintiff suffered no injury during the limitations period because defendant exercised ordinary care in accepting the checks presented by Laursen for deposit.

## III. CONCLUSION

For these reasons, we find that the trial court did not err in denying plaintiff's motion for entry of judgment and in applying MCL 440.3405. Nor did it abuse its discretion by admitting into evidence 14 checks that fell outside the limitation period. However, given the trial court's specific finding that defendant exercised ordinary care in accepting the checks Laursen deposited during the limitation period, under the plain language of MCL 440.3405, defendant is not liable to plaintiff for losses suffered because of Laursen's embezzlement, and we reverse the trial court's $98,945.95 judgment in favor of plaintiff.

/s/ E. Thomas Fitzgerald
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause