*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF STERLING HEIGHTS,

        Plaintiff-Appellee,

v

STERLING HOTELS, LLC, and LOON RIVER
RESTAURANTS, LLC,

        Defendants-Appellants.

UNPUBLISHED
August 4, 2022

No. 355625
Macomb Circuit Court
LC No. 2018-002148-CZ

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

This case concerns public safety. It arises from defendants' continued failure to maintain a reliable and compliant fire-suppression system on their commercial property located in Sterling Heights, Michigan. The property at issue[1] included a hotel, restaurant, and banquet center (the property).[2] In 2018, after responding to several false fire alarms and issuing multiple tickets for problems with the fire-suppression system, plaintiff brought this declaratory and injunctive relief action, alleging that the property was a nuisance. In March 2019, the parties entered into a stipulated consent order, which identified the steps that defendants needed to take to address the problems and included a provision that allowed a consent judgment to be entered against defendants if they breached the order and did not timely cure the breach. In November 2019, the trial court entered the consent judgment against defendants and Asad Malik (an owner of the property), jointly and severally, as a result of their failure to comply with the terms of the consent order. The trial court assessed $79,500 against defendants.[3] This appeal followed. We affirm.

---

[1] The Court was advised by the parties at case call that the property has since been sold.

[2] We refer to Sterling Hotels, LLC and Loon River Restaurants, LLC collectively as "defendants" in this opinion.

[3] Malik is not a party to this appeal.

## I. BACKGROUND FACTS

This case involves defendants' continued failure to maintain a compliant fire-suppression system on its property. Plaintiff issued defendants multiple civil infraction tickets for ongoing violations dating back to 2016. In 2018, after unsuccessfully working with defendants to attempt to remedy the violations, plaintiff filed this action seeking declaratory and injunctive relief under the 2015 International Fire Code (2015 IFC). The city adopted the 2015 IFC as part of its City Code of Ordinances. Plaintiff requested the court to enter an order requiring defendants to cease operations until the fire-suppression system was brought into compliance, or to allow plaintiff to abate the nuisance if defendants refused to act.

In March 2019, the parties reached an agreement to settle the matter. The trial court entered a consent order that required defendants to bring the fire alarm system into compliance with the 2015 IFC. Specifically, the consent order mandated, in pertinent part:

> 1. Defendants shall take the following actions with respect to the Wyndham Gardens Hotel and North Building:
>
> a. The fire alarm system in all areas of the Wyndham Gardens Hotel (excluding the three-story elevator and convention center elevator) shall pass a one hundred (100) percent witness acceptance test performed by a service provider who is registered with the City or otherwise approved by the City and Defendants shall furnish the Statement of Compliance required by the 2015 International Fire Code and the Minimum Required Documentation required by the NFPA 72 to the City by April 30, 2019. Prior to the expiration of the April 30, 2019 deadline, Defendants may request one (1) two-week extension until May 15, 2019, which shall be granted by the City provided that Defendants' request contains an explanation and evidence, including a written statement from Summit Companies, that the requested extension is due to unforeseen circumstances that are out of Defendants' control and could not have been avoided by Defendants. Nothing in this Consent Order shall preclude additional extensions from being requested by Defendants and granted by the City. Any requests for additional extensions must be made before the expiration of the then-current extension and must contain an explanation and evidence, including a written statement from Summit Companies, establishing that the requested extension is due to unforeseen circumstances that are out of Defendants' control and could not have been avoided by Defendants. Additional extensions may be granted by the City in its sole discretion, provided that the granting of additional extensions will not be unreasonably withheld. The granting of additional extensions must be in writing by the City to be effective. Upon compliance with this subsection, the City shall approve fire alarm permits PFA 18-0031 and PFA 18-0032[.]

Additionally, the consent order required defendant to maintain an independent, third-party fire watch at the property until defendants were able to comply with the above terms. Further, defendants voluntarily executed a consent judgment for $79,500 contemporaneous to the execution of the consent order. The consent order also specified the procedure that plaintiff was required to follow if defendants breached the order:

5. . . . In the event of a breach of the terms of this Consent Order by Defendants, the City shall provide written notice of the breach to Defendants' counsel and Defendants shall have fourteen (14) days to cure the breach. If the breach is not cured within 14 days of written notice being provided, the Consent Judgment may be entered with the Court along with a supporting affidavit of the City. Defendants shall be entitled to one (1) written notice of the breach and opportunity to cure a breach of the terms of this Consent Order. In the event of a subsequent breach of this Consent Order by Defendants, the Consent Judgment may be entered with the Court without written notice of the breach or an opportunity to cure the breach being provided. . . . Failure by the City to enforce any rights or remedies provided for in this Consent Order shall not be deemed to be a waiver of those or any other rights or remedies under this Consent Order.

Upon defendants' full compliance with the order, the case would be dismissed with prejudice.

In November 2019, plaintiff requested the court enter the consent judgment, alleging that defendants failed to bring the fire alarm system into compliance with the consent order despite multiple extensions and opportunities to cure the breaches. After conducting an evidentiary hearing on November 15, 2019, the trial court concluded that defendants had breached the consent order and had not timely cured that breach. Accordingly, the court entered the consent judgment, which required defendants to pay plaintiff $79,500, consistent with the terms of the consent order.

## II. THE CONSENT ORDER

Defendants first argue that the trial court erred as a matter of law because, under the consent order, plaintiff did not have the authority to challenge the witness acceptance tests conducted by the service provider Summit Companies (Summit) in determining whether defendants had complied with the consent order. Defendants argue that they complied with the unambiguous terms of the consent order and, as a matter of law, there could be no breach. We disagree.

This issue involves the interpretation of the consent order, which is considered a contract between the parties. *Andrusz v Andrusz*, 320 Mich App 445, 453; 904 NW2d 636 (2017). This Court reviews de novo, as a question of law, the proper interpretation of a contract. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016).

The consent order, as defendant correctly asserts, does not expressly provide that plaintiff is permitted to review the witness acceptance tests by the service provider to determine if the testing procedure was proper. Defendants claim that they only needed to produce documentation that the fire alarm system passed the service provider's testing, which they did, and that plaintiff was obligated to accept the certification of the testing results without further review.

There is no dispute that the consent order required defendant to "pass a one hundred (100) percent witness acceptance test performed by a service provider who is registered with the City or otherwise approved by the City" and then submit the "Statement of Compliance" to plaintiff. The trial court concluded that plaintiff provided undisputed evidence that defendant failed to comply with the order. Defendants argue that the consent order only required that they produce documentation showing that the alarm system passed testing, which they did, and that plaintiff did

not have any authority to challenge the substance of the test results under the order. Because the consent order is treated as a contract, *Andrusz*, 320 Mich App at 453, its interpretation is guided by the following principles:

> Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. When interpreting a contract, our primary obligation is to give effect to the parties' intention at the time they entered into the contract. To do so, we examine the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written. [*Innovation Ventures*, 499 Mich at 507 (quotation marks, citations, and alteration omitted).]

The consent order unambiguously provided, in relevant part, that (1) the fire system was required to comply with the 2015 IFC and pass a one hundred (100) percent witness acceptance test, and (2) that testing was to be performed by a registered or approved service provider. Defendant does not challenge these requirements on appeal. Rather, defendants argue that the question of whether they passed the witness acceptance test was solely for the approved service provider to decide. Defendants posit that plaintiff had no authority to review whether the testing performed was proper. This argument ignores the procedure under the order, whereby plaintiff was to provide defendants with written notice of a breach of the terms of the consent order and afford defendants 14 days to cure the breach, subject to certain extensions. This language unambiguously gives plaintiff unilateral authority to determine whether defendants' action complied with the 2015 IFC and satisfied the requirements of a 100% witness acceptance test. While defendants had submitted several tests, the evidence did not support a finding that defendants actually passed the witness acceptance test. The evidence established that Summit only tested new equipment despite the fact that the system included multiple older devices. A Summit employee confirmed that the testing performed was limited to the new devices only and that defendants would be handling the removal of the older devices. Defendants acknowledged that they eventually removed 500-600 old, untested fire alarm devices. On June 26, 2019, the system was tested again, and plaintiff's fire chief witnessed that not all components of the system were working (and this despite the fact that defendants were open for business and had guests staying in the hotel). Test results from August 15, 2019, also showed that there were still problems with the fire-suppression system, demonstrating that the system was not compliant and directly contradicting the documentation submitted by Summit.

In sum, contrary to what defendants argue, the terms of the consent order gave plaintiff the authority to scrutinize the test results and documentation from the service provider to determine whether the testing complied with the 2015 IFC and satisfied the requirements of a 100% witness acceptance test. Defendants have not shown that the trial court was required to conclude, as a matter of law, that defendants complied with the terms of the consent order by merely demonstrating that the limited testing performed by Summit was deemed "successful."

### III. WHETHER THERE WAS A BREACH OF THE CONSENT ORDER

Defendants next argue that the trial court erred by finding that defendants breached the consent order. We disagree.

We review a trial court's findings of fact for clear error and its conclusions of law de novo. MCR 2.613(C); *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). In reviewing the trial court's findings, "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Homes*, 256 Mich App at 512.

The terms of the consent order required defendants to pass the "100-percent witness acceptance test performed by an approved service provider" term by furnishing "the Statement of Compliance required by the 2015 International Fire Code [2015 IFC] and the Minimum Required Documentation required by the NFPA 72 to the City by April 30, 2019." The consent order allowed plaintiff to grant extensions of the deadline, which it did on several occasions, as noted above, and while guests were staying at the hotel.

The trial court found that defendants did not meet the initial deadline and that plaintiff notified defendants of the breach on June 21, 2019. Thus, defendants had 14 days to cure the breach, extending the deadline to July 5, 2019. Even though defendants produced documentation that their newly installed system passed testing on June 27, 2019, plaintiff learned that the testing did not include all devices, and that older devices still remained in the building. The trial court found that defendants not only failed to meet the deadline, but still had not remedied the deficiencies by the time the court issued its ruling on November 23, 2020.

Defendants argue that the trial court erred by ruling that they breached the consent order because the June 27, 2019 test examined only the new devices. This assertion is not only inaccurate, but a troublesome perspective, given that defendants were renting rooms to guests, who undoubtably assumed they were safe while staying at the property. Although defendants argue that they were only required to demonstrate that the newly installed system worked, the consent order required compliance with the 2015 IFC. Section 901.4.5 of the 2015 IFC provides, "Any device that has the physical appearance of life safety or fire protection equipment but that does not perform that life safety or fire protection function shall be prohibited." The older devices were required to be removed to comply with the 2015 IFC. Moreover, the testimony at the evidentiary hearing attributed some of the continuing problems with the system to the presence of the older equipment on the property. The trial court noted that the continued presence of the older devices was part of the reason that defendants continued to miss the deadlines, because testing was performed only on the newly installed system. The trial court did not err by finding that the continued presence of the older devices was one reason why the problems with the alarm system persisted, and thus was a factor for why the system did not function properly.

Defendants further argue that the August 15, 2019 report from Summit established that they were in compliance with the terms of the order. The record indicates that plaintiff provided defendants the opportunity to submit the required documentation to establish compliance by August 7, 2019. Any documents submitted by defendants after that deadline were untimely. Notably, even after defendants untimely submitted new test results on August 15, 2019, event logs for the building continued to show problems with the system. Plaintiff's fire marshal testified that the problems had not been corrected, and he was not confident that the system would work when guests were sleeping because the system was in a constant state of trouble. Although Summit attributed the problems within the system to normal operations or maintenance reasons, the trial

court was in a superior position to evaluate the credibility of the witnesses. We must defer to the trial court's determinations. MCR 2.613(C). Although defendants attempt to show that all issues were resolved with subsequent testing, defendants cannot argue that they timely complied with the terms of the consent order by satisfying them after the July 5, 2019 deadline. Therefore, under the terms of the consent order, the trial court did not clearly err by concluding that plaintiff was entitled to entry of the consent judgment after defendants breached the consent order and did not cure the breach by the July 5, 2019 deadline.

Defendants also argue that it should be sufficient to demonstrate that they substantially complied with the consent order to avoid entry of the consent judgment. However, defendants failed to argue this below. Therefore, this issue is unpreserved and we decline to address it. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("generally a failure to timely raise an issue waives review of that issue on appeal.") (quotation marks and citation omitted). Regardless, the parties' agreement required <u>100%</u> compliance, not substantial compliance. The trial court did not err by entering the judgment.

## IV. FAILURE TO CONDUCT A STATUS CONFERENCE OR AN EVIDENTIARY HEARING

In November 2020, defendants requested a status conference or another evidentiary hearing. Defendants argue that the trial court erred by entering the consent judgment without granting their request. We disagree.

A trial court's decision whether to conduct an evidentiary hearing is reviewed for an abuse of discretion. *Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004).

Defendants requested a status conference in order to update the court on the status of the alarm system as of November 2020. Defendants claimed that a new alarm company had identified the cause of the trouble with the system as a ground fault with the electrical wiring. It was not necessary for the trial court to conduct a hearing to determine the status of the fire alarm system in 2020 when the issue before the court was whether plaintiff was entitled to entry of a consent judgment under the terms of the consent order. The controlling date for purposes of determining whether defendants complied with that order was July 5, 2019. While plaintiff still had a continued interest in making sure that the fire alarm system functioned properly in the future, events occurring after July 5, 2019, had no bearing on whether defendants could avoid entry of the consent judgment. Therefore, the trial court did not err by denying defendant's motion.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett