*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BAYBERRY GROUP, INC.,

      Plaintiff/Counterdefendant-Appellant,

v

CRYSTAL BEACH CONDOMINIUM
ASSOCIATION, GENTLE WINDS
CONDOMINIUM ASSOCIATION, TALL TIMBER
CONDOMINIUM ASSOCIATION, and GREAT
LAKES CONDOMINIUM ASSOCIATION,

      Defendants/Counterplaintiffs-
      Appellees.

UNPUBLISHED
February 22, 2024

No. 362923
Leelanau Circuit Court
LC No. 2017-009956-CH

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

This case returns to this Court following a remand to the trial court to make specific findings of fact regarding the proportional use of a roadway easement, called the South Homestead Road easement, by plaintiff, Bayberry Group, Inc., a successor to the developer of the Homestead Resort, and defendant condominium associations at the Homestead. On remand, the parties submitted trial briefs and argument using evidence presented during the original trial. Bayberry appeals as of right the trial court's decision and order after remand. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

The prior opinion in this matter, *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 389-390; 964 NW2d 846 (2020), stated the underlying facts:

> This matter arises from a dispute involving the interpretation of condominium documents and Michigan common law as it relates to the obligations of defendants, Crystal Beach Condominium Association, Gentle Winds Condominium Association, Great Lakes Condominium Association, and Tall Timber Condominium Association, to pay for the maintenance, repair, and upkeep

-1-

of a roadway easement called the South Homestead Road easement. South Homestead Road connects defendants' respective properties and other properties in The Homestead to M-22. Portions of Winds' South Homestead Road traverse Gentle Winds' property, Great Lakes' property, and Tall Timber's property.

The Homestead is a recreational resort located on the shores of Lake Michigan. Defendants were four of the five earliest condominium projects at The Homestead, and defendants' master deeds were recorded in the 1970s. Thereafter, the number of condominium associations at The Homestead increased. In 2013, Bayberry began engaging with representatives of the various condominium associations. Bayberry sought an agreement to share the costs of maintaining the roadways and other areas within The Homestead. As a result of these efforts, the Common Area Maintenance Agreement ("CAM agreement") was created. The CAM agreement provided for maintenance of all of the "Roadway Areas" within The Homestead, which included the South Homestead Road easement. "Roadway Areas" included not only the paved or graveled roadways, but also "lawns and the entirety of any planting bed or any other landscaping lying wholly or partially within the width of the roadway easement." A majority of the condominium associations serviced by South Homestead Road executed the CAM agreement, but defendants did not. The CAM agreement became effective on January 1, 2015.

After defendants refused to pay a share of fees under the CAM agreement, Bayberry filed suit against defendants on July 13, 2017. In relevant part, Bayberry alleged that the South Homestead Road easement is a general common element of each condominium project and that, under defendants' master deeds and bylaws, defendants were responsible for its maintenance, repair, and upkeep. Bayberry requested that it be awarded damages for maintenance costs from 2011 through 2017 and that the trial court order defendants to "pay an amount equal to the total cost of maintenance, repair and upkeep of the Easement less the usage costs incurred by all other associations and Co-owners . . . ." Defendants denied that the South Homestead Road easement was listed as a common element in their condominium documents. In their affirmative defenses, defendants asserted that the doctrine of waiver and the defense of laches barred Bayberry's claims for damages because Bayberry (and its predecessors in interest) had failed to request any cost-sharing payments for more than 35 years following the creation and recording of the condominium documents.

Following a three-day bench trial, the trial court held that defendants were obligated under common law to contribute their proportionate share of the cost for maintenance, repair, and upkeep of the portion of South Homestead Road necessary for their safe ingress and egress, based upon their use, and that Bayberry was obligated to contribute its proportionate share of the cost for maintenance, repair, and upkeep, based upon use, for the portion of South Homestead Road that crosses the property of defendants. The trial court held that the cost of future repair and maintenance was to be distributed among all users in proportions that closely approximated the usage of the parties. The trial court created a formula in an attempt to accomplish this. The trial court used the following formula for allocating defendants' proportional cost of repair, maintenance, and upkeep of South Homestead Road:

*Units Per Association/331 Total Units*[1] *Utilizing South Homestead Road*
*x*
*Repair/Maintenance/Upkeep Cost Per Foot x 3,840 feet*

The trial court used the following formula for allocating Bayberry's proportional cost of repair, maintenance, and upkeep of South Homestead Road over defendants' properties:

*247*[2]*/331 Total Units Utilizing South Homestead Road*
x
*Repair/Maintenance/Upkeep Cost Per Foot x 368 Feet (for Gentle Winds)*
*Repair/Maintenance/Upkeep Cost Per Foot x 392 Feet (for Great Lakes)*
*Repair/Maintenance/Upkeep Cost Per Foot x 219 feet (for Tall Timber)*

In the prior appeal, this Court rejected Bayberry's argument that the trial court failed to account for other users of South Homestead Road when calculating the proportional use of the easement. Specifically, this Court noted that the trial court found approximately 331[3] units used the entire length of South Homestead Road. *Bayberry Group, Inc*, 334 Mich at 403. The 331 units consisted of defendants' 84 units, Bayberry's 127 units, plus 100 assumed units for other condominium associations/homeowners. *Id*. at 404. This Court concluded that "when fashioning a formula for allocation of use, the trial court took into account Bayberry's use of the easement, defendants' use of the easement, and 'other guests/homeowners[']' use of the easement. The trial court then attributed the nonparties' use of the easement to Bayberry." *Id*.

This Court concluded, however, that the trial court inappropriately relied upon speculation instead of evidence and did not make specific findings of fact concerning why it assigned "100 assumed units" to Bayberry for nonparties' use of the easement. *Id*. at 406-408. Relevant to the issues raised in this appeal, this Court vacated that portion of the trial court's opinion and order and remanded for the trial court to make specific findings of fact on the proportion of each party's use of the easement as required under *Bowen v Buck and Fur Hunting Club*, 217 Mich App 191; 550 NW2d 850 (1996).[4] *Id*. at 407-408.

---

[1] The total units utilizing South Homestead Road included "100 assumed units for other condominium associations/homeowners." *Bayberry Group, Inc*., 334 Mich App at 406.

[2] The units attributed to Bayberry was calculated by taking the total number of units using South Homestead Road (331) and subtracting defendants' 84 units.

[3] This Court noted that "the '331 units' referred to by the trial court appeared to be the result of a mathematical error in adding Bayberry's 127 units, 100 'assumed' units for the other condominium associations, and defendants' 84 units; the sum of 127, 100, and 84 is 311." *Bayberry Group, Inc*., 334 Mich App at 404 n 1.

[4] In *Bowen*, 217 Mich App at 194, this Court held that the maintenance and repairs costs of an easement used jointly by both the dominant and servient owners are to be in proportion to each party's use.

On remand, the parties agreed that 599 units were eligible to use the full length of South Homestead Road. The trial court approached the allocation of use issue under *Bowen* by reiterating "the uncontested findings established in the prior order and affirmed on appeal," and then providing the relevant cost-allocation formulas. The court correctly noted that in the previous appeal this Court did not dispute the formulas used to determine the parties' proportional costs. Rather, this Court concluded that the trial court relied upon speculation in finding that the total units utilizing South Homestead Road was 331.[5] On the basis of the evidence presented and the parties' agreement that the total number of units eligible to use the full length of South Homestead Road was 599, the court found under *Bowen* that 599 total units actually used South Homestead Road. The court then used 599, instead of 331, in the formulas. The trial court acknowledged with respect to the portion of South Homestead Road that traversed defendants' property that Bayberry may not be responsible for the entire cost allocated to the 515 nondefendant units. The court stated, however, that "allocation of these costs between the Plaintiff and non-Defendant condominium associations, property owners and other entities is not before this Court and therefore, the Court will not opine on this particular issue."

## II. ALLOCATION OF COSTS

### A. STANDARD OF REVIEW

"This Court reviews a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo. A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Homes, Inc v Kroll*, 256 Mich App 505, 512; 667 NW2d 379 (2003) (citations omitted).

### B. ANALYSIS

Bayberry appears to argue that the trial court failed to consider the seasonal use[6] of South Homestead Road when determining Bayberry's proportionate use of South Hampton road that traverses defendants' property.[7] It contends that the trial court assumed that all users of South Homestead Road would use year round the portion of South Homestead Road between defendants' property and the Beach Club at the end of South Homestead Road. Bayberry also contends that the trial court "ignored the fact that the Beach Club is only open for four months of the year" and

---

[5] Again, the correct number should have been 311.

[6] Bayberry did not argue seasonal use of South Homestead Road in the original trial of this matter.

[7] Bayberry's argument is not clear. To the extent that Bayberry's argument might relate to defendants' proportionate cost of the South Homestead Road easement for ingress and egress, the argument is waived because Bayberry agreed to the formula utilized by the trial court in determining defendants' proportional cost for their use of the easement. See, e.g., *Grant v AAA Mich/Wisconsin, Inc (On Remand)*, 272 Mich App 142, 148-149; 724 NW2d 498 (2006) (holding that the plaintiff's trial lawyer had waived a particular appellate argument by asserting a contrary position in the trial court).

that only 13 Bayberry-owned hotel units use that portion of South Homestead Road beyond defendants' properties for eight months of the year. It further contends that the "evidence is clear that there is no material traffic going over [defendants'] properties in the off season." Bayberry does not cite to any evidence presented in the trial court in support of these contentions. Bayberry merely asserts its characterization of the evidence without providing a cogent legal analysis of the trial court's actual findings and determination. This argument is, therefore, abandoned.[8] See *Redmond v Heller*, 332 Mich App 415, 435 n 9, 449; 957 NW2d 357 (2020).

Bayberry also argues that the trial court erred by allocating to Bayberry the use of nonparties who traverse South Homestead Road over defendants' property. It contends that it "is being ordered to pay 85.9% of the costs that the Defendant Associations incur in maintaining South Homestead Road as it travels over their fee simple property." Bayberry misrepresents how the trial court dealt with the other users of the South Homestead Road easement over defendants' properties.

This Court previously rejected Bayberry's argument that the trial court failed to account for the other users of the South Homestead Road easement. This Court stated that it was "clear that the trial court accounted for other users when calculating the proportional use of the easement." *Bayberry Group, Inc*, 334 Mich at 403. "Specifically, the trial court noted that, along with defendants, 'South Homestead Road is also used by other condominium associations, home owners, visitors to and employees and vendors of The Homestead Resort.' " *Id*. This Court also noted that the trial court attributed "the nonparties' use of the easement to Bayberry." *Id*. at 404. This Court did not conclude that the trial court erred by attributing the nonparties' use of the easement to Bayberry. On remand, the trial court specifically noted that the cost and repair for the segments that traversed defendants' properties had to be distributed among defendants and the remaining 515 units in proportions that closely approximated the usage of the parties. Taking these other users into account was necessary for the trial court to comply with the requirement in *Bowen* that "the costs of repair and maintenance should be distributed among all users in proportions that closely approximate the usage of the parties." *Bowen*, 217 Mich App at 193 (quotation marks and citation omitted). The trial court therefore properly accounted for all of the users of the easement over defendants' properties. As the trial court suggested, allocation of the costs between Bayberry and the nondefendant condominium associations is an issue between Bayberry, the nondefendant condominium associations, property owners, and other entities who use the easement over defendants' properties.

Affirmed. Defendants/appellees may tax costs as the prevailing parties. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett

---

[8] Nevertheless, this Court remanded to the trial court for factual findings regarding the proportionate use of South Homestead Road because the court's finding that 331 total units used the road was speculative. On remand, the parties agreed that the total number of units that used South Homestead Road was 599.