KIRCHER v CITY OF YPSILANTI

Docket No. 256478. Submitted December 7, 2005, at Lansing. Decided December 13, 2005, at 9:15 a.m.

David J. Kircher brought an action in the Washtenaw Circuit Court against the city of Ypsilanti and another, claiming that the city violated its own ordinances, state law, and his constitutional rights by its treatment of him as a residential landlord through the application of ordinances requiring inspections and certificates of compliance that allowed occupancy, and seeking injunctive relief. The court, David S. Swartz, J., granted summary disposition for the city. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred in dismissing the plaintiff's claim that the city illegally applied engineering fees to the plaintiff's properties as taxes and treated them as tax liens. An actual controversy remained after the city removed the charges. The plaintiff challenged the city's practice of assessing the fees, not merely the specific charges that the city removed. An actual controversy exists where a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights. No actual injury or loss need have occurred.

2. The trial court erred in determining that Ypsilanti ordinance § 18-151 affords the city the discretion to issue certificates of compliance that expire less than two years from the date of their issuance. The ordinance mandates expiration after two years from the date of issuance unless the certificate was suspended before the expiration date by the building inspection department. In the absence of such an act by that department, a certificate must remain in effect until two years after its issuance, at which time it expires.

3. The trial court correctly determined that the city need not issue certificates of compliance for individual dwelling units that are safe but are within a building that, overall, fails an inspection. Ypsilanti ordinance § 18-151 relates to issuing certificates of compliance for a building, not merely for individual units. Ypsilanti ordinance § 18-149 precludes the issuance of a certificate of compliance for any units if the building has any violations.

4. A landlord's duty to comply with local ordinances and other laws is independent of covenants made to tenants in leases. MCL 554.139(2) and Ypsilanti ordinance § 58-122 address a landlord's obligations to the landlord's tenants, and allow modification of covenants between a landlord and the tenant of these obligations relating to tort or contractual liability for the landlord for personal injuries to the lessee. The requirement in Ypsilanti ordinance §18-146 of a certificate of compliance before rental does not conflict with the statute or the ordinance, and that requirement may not be modified by a lease agreement.

5. The trial court appropriately dismissed the plaintiff's claim that Ypsilanti ordinance § 18-150 provides insufficient standards for the city's issuance of temporary certificates of compliance. The ordinance allows issuance of a temporary certificate of compliance only under specific criteria: substantial compliance, no violations that pose an imminent safety threat, and provision of all current registration information.

6. The trial court correctly determined that the city may charge more for failing to appear for a scheduled inspection than for the actual inspection. Fees charged by a municipality must be reasonably proportionate to the direct and indirect costs of providing the service for which the fee is charged. The plaintiff has not shown that the fee generates more than incidental revenue or that it is not reasonably related to the cost of sending an inspector to a location and then rescheduling the inspection.

7. The trial court erred in dismissing the claim for injunctive relief relating to those claims that the Court of Appeals has found meritorious.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. DECLARATORY JUDGMENTS — ACTUAL CONTROVERSY.

An actual controversy exists where a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights; no actual injury or loss need have occurred.

2. MUNICIPAL CORPORATIONS — ORDINANCES — CERTIFICATES OF COMPLIANCE — RESIDENTIAL RENTAL PROPERTIES.

A landlord's duty to comply with a municipal corporation's local ordinances and other laws is independent of covenants made to tenants in leases; although certain tort or contractual liabilities for the landlord are defined by statute and may be waived in the lease, an ordinance requirement of a certificate of compliance before the

rental of residential property does not conflict with the statute and may not be waived by a lease agreement (MCL 554.139[2]).

*Douglas Spicer* for David J. Kircher.

*Barr, Anhut & Gilbreath, P.C.* (by *John S. Gilbreath, Jr.,* Assistant Ypsilanti City Attorney), for the city of Ypsilanti.

Before: HOEKSTRA, P.J., and NEFF and DAVIS, JJ.

DAVIS, J. Plaintiff appeals as of right the trial court's grant of summary disposition to defendant city of Ypsilanti and the resulting dismissal of plaintiff's complaint. Plaintiff owns several rental properties that are located in the city of Ypsilanti and, thus, are subject to defendant's ordinances governing inspection and certificates of compliance. Plaintiff asserts that defendant, through its application of those ordinances, is in the practice of violating its own ordinances, state law, and his constitutional rights. The trial court disagreed. We affirm in part, reverse in part, and remand.

We first address plaintiff's argument that defendant illegally applied engineering fees to his properties as taxes and treated them as tax liens. After the complaint was filed, defendant removed those charges and argued that the issue had been resolved. The trial court agreed that no actual controversy remained, and it dismissed the claim with prejudice. Plaintiff argues that the trial court erred, and we agree.

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). MCR 2.605 provides that a court may declare the rights and legal relations of an interested party seeking a declaratory judgment in a case of actual controversy within its jurisdiction. We

also review de novo a trial court's determination whether an actual controversy exists. *Genesco, Inc v Dep't of Environmental Quality,* 250 Mich App 45, 52; 645 NW2d 319 (2002). "In general, an 'actual controversy' exists where a declaratory judgment or decree is necessary to guide a plaintiff's future conduct in order to preserve his legal rights." *Shavers v Attorney General,* 402 Mich 554, 588; 267 NW2d 72 (1978). It is not necessary that "actual injuries or losses have occurred"; rather "that plaintiffs plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised." *Id.* at 589.

We find that plaintiff has done so. Plaintiff challenged defendant's practices of assessing the fees, not merely the specific charges that defendant removed. When defendant removed those charges, it did not repudiate its practice or concede that they were unauthorized. Significantly, defendant apparently expressed a willingness to reapply the same fees in the future. A declaratory judgment is necessary to guide the parties' conduct and to preserve the plaintiff's legal rights; this is not an instance in which the injury sought to be prevented is merely hypothetical. The trial court erred in dismissing this claim.

Plaintiff next argues that the trial court erred in its interpretation of defendant's ordinance § 18-151, which governs expiration of certificates of compliance. That section provides, among other things, that "[c]ertificates of compliance shall expire two years after the date that they are issued unless earlier suspended by the building inspection department" and "[t]he date of issuance shall be indicated on the certificate." The trial court determined that this section afforded defendant the discretion to issue certificates of compliance that expire less than two years from the date of their issuance. Plaintiff argues that the trial court's reading is improper. We agree.

This Court reviews de novo a trial court's interpretation of an ordinance. *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 663-664; 697 NW2d 180 (2005). The rules of statutory construction apply to ordinances. *Gora v Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998). The primary rules of construction are that the courts must give effect to the intent of the Legislature and that unambiguous language must be enforced as it is written. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). Every word, clause, and sentence in a statute is presumed to be intentional, so "we should take care to avoid a construction that renders any part of the statute surplusage or nugatory." *Pohutski v Allen Park*, 465 Mich 675, 683, 684; 641 NW2d 219 (2002) (citations omitted).

The word "shall" unambiguously mandates an action. *Roberts, supra* at 65. Thus, § 18-151 plainly provides that certificates of compliance must expire two years from their date of issuance. The first part of the relevant sentence, "[c]ertificates of compliance shall expire two years after the date that they are issued," could, by itself, reasonably indicate a maximum duration for the certificates without a minimum duration. However, such an interpretation is incompatible with the remainder of the ordinance. "Unless" is defined as "except under circumstances that." *Random House Webster's College Dictionary* (2000). "Suspend" means "to bring to a stop, usu. for a time," or "to come to a stop or cease from operation, usu. temporarily" and "suspension" connotes a "temporary abrogation" or stoppage. *Id.* Thus, the ordinance plainly establishes a single circumstance under which a certificate would not expire two years after its issuance date: when the building department affirmatively halts an already-issued certificate that would otherwise still be in effect. In the absence of such an act by the building department,

certificates must remain in effect until two years after their issuance dates, at which time they will expire.

Defendant argues that § 18-151 must be read in conjunction with § 18-112, which requires defendant to inspect all rental dwellings at two-year intervals. We agree and conclude that defendant may undertake its inspection of a rental unit under § 18-112, and, if it discovers grounds to do so, it may then suspend the certificate of compliance as allowed by § 18-151. Nothing in § 18-112 addresses or governs the expiration of certificates of compliance, and nothing in § 18-151 affects or inhibits defendant's authority to inspect a rental unit as otherwise allowed by applicable law. However, nothing in the ordinances, taken separately or together, supports a construction of § 18-151 that would render the phrase "unless earlier suspended by the building inspection department" nugatory or surplusage. Proper construction of all pertinent language requires that a certificate of compliance must be issued with an expiration date set at two years from the date of issuance, and a certificate can only be suspended within that time by the building inspection department as allowed under defendant's ordinance scheme.

Plaintiff next argues that the trial court erred in dismissing his claim that defendant must issue certificates of compliance for individual dwelling units within a building that is safe but that, overall, fails an inspection. We disagree. Defendant's ordinance § 18-149 states "[a] certificate of compliance shall be issued for a multiple dwelling or one- or two-unit rental dwelling with no violations on condition that the premises remain in safe, healthful and fit condition for occupancy." Plaintiff argues that a certificate must issue to a subunit that passes inspection, even where the overall building does not, as long as the overall building is safe.

However, "dwelling" means "a building or other place to live in; place of residence; abode." *Random House Webster's College Dictionary* (2000). Thus, the ordinance refers to the building, not merely individual units. Because "no violations" is unambiguously a requirement for issuance of a certificate, if the building has any violations, § 18-149 precludes issuance of a certificate of compliance. The trial court properly dismissed this claim.

Plaintiff next argues that the trial court erred in failing to find that ordinance § 18-146, which requires an owner to obtain a certificate of compliance before renting a unit, conflicts with MCL 554.139(2) and ordinance § 58-122, both of which allow parties to leases of at least one year to modify the covenants between a landlord and a tenant. We agree with defendant and the trial court that MCL 554.139(2) and § 58-122 only address a landlord's obligations to the landlord's tenants. See, e.g., *Calef v West*, 252 Mich App 443; 652 NW2d 496 (2002) (addressing a tenant's cause of action for injury resulting from an undisclosed latent defect given the inclusion of an exculpatory clause in the lease). A landlord's duty to comply with applicable local ordinances and other laws is independent of covenants made to tenants in leases, which duty can impose tort or contractual liability on the landlord for personal injuries to the lessee. *Mobil Oil Corp v Thorn*, 401 Mich 306; 311-313; 258 NW2d 30 (1977); *McDowell v Detroit*, 264 Mich App 337, 350; 690 NW2d 513 (2004); *O'Donnell v Garasic*, 259 Mich App 569, 581-582; 676 NW2d 213 (2003). The landlord's duty to comply with defendant's ordinances is unaffected.

Plaintiff next argues that the trial court erred in dismissing his claim that ordinance § 18-150 is invalid because it provides insufficient standards to guide de-

fendant in issuing temporary certificates of compliance. We disagree. Section 18-150 provides:

> A temporary certificate of compliance may be issued for a multiple dwelling or one- or two-unit rental dwelling following inspection, which is found to be substantially in compliance, provided there are no imminent life[-], health[-] or safety-threatening violations and provided that all current registration information has been provided. The temporary certificate shall state on its face any remaining violations to be corrected and state that it will expire if such violations are not corrected within the time specified by the building official or reasonable extensions thereof which shall be noted on the certificate. Failure by the owner or the owner's agent to correct the violations within the time specified by the building official shall constitute a violation of this code and the multiple dwelling or one- or two-unit rental dwelling shall be ordered vacated.

Issuance of a temporary certificate thus depends on three specific criteria: substantial compliance, no violations that pose an imminent safety threat, and provision of all current registration information. It is not a standardless ordinance that would allow defendant to proceed at its own whim. *Osius v St Clair Shores,* 344 Mich 693, 700-701; 75 NW2d 25 (1956). The trial court appropriately dismissed this claim.

Plaintiff next argues that the trial court erred in dismissing his challenge to defendant's property inspection fee schedule. Defendant charged $45 for an initial inspection, $35 for a recertification inspection, $30 for reinspection after recertification, and $50 for failing to appear for a scheduled inspection. Plaintiff argues that charging more for failing to appear than for the actual inspection is an illegal subterfuge for raising revenue beyond defendant's power. We disagree.

Fees charged by a municipality must be reasonably proportionate to the direct and indirect costs of provid-

ing the service for which the fee is charged. *Merrelli v St Clair Shores,* 355 Mich 575, 583, 588; 96 NW2d 144 (1959). Such a fee is presumed reasonable unless it is facially or evidently so "wholly out of proportion to the expense involved" that it "must be held to be a mere guise or subterfuge to obtain the increased revenue." *Id.* at 584, quoting *Vernor v Secretary of State,* 179 Mich 157, 168, 170; 146 NW 338 (1914). Defendant argues that its fee for failing to appear is an inducement to reduce the number of times inspectors have to go to a particular property for inspections, in order to have the inspection process work as smoothly and efficiently as possible. There is no showing that the fee generates more than incidental revenue or that it is not reasonably related to the cost of sending an inspector to a location and then rescheduling the inspection. The trial court appropriately dismissed this claim.

Finally, plaintiff argues that the trial court erred in dismissing his claim for injunctive relief premised on his substantive claims. We agree with respect to those of his claims we have found meritorious, and we disagree with respect to those of his claims we have found properly dismissed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.