# STATE OF MICHIGAN

# COURT OF APPEALS

VAN BUREN CHARTER TOWNSHIP,

      Plaintiff-Appellant,

v

VISTEON CORPORATION,

      Defendant-Appellee.

FOR PUBLICATION
May 16, 2017
9:05 a.m.

No. 331789
Wayne Circuit Court
LC No. 15-008778-CK

Before: STEPHENS, P.J., and SAAD and METER, JJ.

STEPHENS, J.

Plaintiff, Van Buren Charter Township, appeals as of right an order granting summary disposition pursuant to MCR 2.116(C)(4) and (C)(8) in favor of defendant, Visteon Corporation, on plaintiff's declaratory judgment and breach of contract claims. We affirm.

## I. BACKGROUND

This case arises from a 2010 Settlement Agreement and Mutual Release (the Agreement) entered between plaintiff, a charter township in Wayne County, and defendant, a publicly-traded global automobile parts supplier, in the midst of defendant's then ongoing bankruptcy proceedings. Pertinent here, the Agreement dictated defendant's obligations to plaintiff for a shortfall in payments on bonds defendant received from plaintiff in 2003, for the purpose of financing the development and construction of defendant's national headquarters (Visteon Village) in plaintiff's township. Sometime in 2013, plaintiff engaged Public Financial Management, Inc. (PFM), to conduct a cash flow analysis for the township. PFM returned a report on September 6, 2013, presenting 15 different cash flow scenarios, each of which resulted in a shortfall. With regard to "Future Cash Shortfall," the drafter of the report stated, "Since the current Taxable Values within [plaintiff's township] are significantly lower than the original projections in 2003, a cash shortfall is inevitable if new revenues are not introduced." The estimated amount of the shortfall ranged from $23.7 million to $36.4 million, and the shortfall was projected to occur sometime between 2017 and 2019.

Plaintiff forwarded a copy of the PFM Report to defendant, along with a demand letter that requested defendant engage in immediate negotiations to determine defendant's payment obligation with respect to the projected shortfall pursuant to the Agreement. Defendant agreed to meet with plaintiff, but disputed any obligation to engage in negotiations until after plaintiff actually experienced a bond payment shortfall. Based on this dispute, plaintiff brought a two-

count complaint against defendant, alleging breach of contract for defendant's failure to negotiate in good faith and anticipatory repudiation of its obligation to pay any amount of the bond payment shortfall, and requesting a declaratory judgment determining the rights and obligations of both parties pursuant to Paragraph 3 of the Agreement.

The trial court granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(4) and (C)(8), deciding that:

(1) the parties' disagreement over the meaning of a term in their agreement did not present a justiciable issue,

(2) plaintiff's breach of contract and declaratory judgment claims were not ripe for adjudication because the actual damages to plaintiff from the payment shortfall were only "hypothetical" in nature, and

(3) plaintiff's breach of contract and declaratory judgment claims were not ripe for adjudication because the payment shortfall was not scheduled to occur until a future date.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition in an action for a declaratory judgment." *Lansing Schools Educ Ass'n v Lansing Bd of Educ (On Remand)*, 293 Mich App 506, 512-513; 810 NW2d 95 (2011). "Questions regarding ripeness are also reviewed de novo." *King v Mich State Police Dep't*, 303 Mich App 162, 188; 841 NW2d 914 (2013). This Court also reviews de novo questions involving the proper interpretation of a contract and the legal effect of a contractual clause. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

In this case, defendant sought summary disposition pursuant to MCR 2.116(C)(4) and (C)(8). The trial court indicated that it was granting defendant's motion pursuant to both subrules. However, on appeal, the parties contest the propriety of dismissal pursuant to MCR 2.116(C)(4). Although we acknowledge inconsistencies between published decisions of this Court and more recent unpublished decisions regarding whether subrule (C)(4) supports dismissal for failure of justiciability grounds such as ripeness,[1] we need not address the conflict here. *Morales v Parole Bd*, 260 Mich App 29, 32; 676 NW2d 221 (2003) ("[T]his Court generally does not address moot questions or declare legal principles that have no practical effect in a case."). Both parties concede that summary disposition for lack of ripeness is properly considered pursuant to MCR 2.116(C)(10), and even if the trial court erroneously granted

---

[1] See *Braun v Ann Arbor Charter Twp*, 262 Mich App 154, 160; 683 NW2d 755 (2004) (expressly stating that summary disposition pursuant to MCR 2.116(C)(4) was proper when an otherwise justiciable takings claim was not ripe for review); see also *Broz v Plante & Moran, PLLC*, unpublished opinion per curiam of the Court of Appeals, issued May 17, 2016 (Docket No. 325884) (expressly stating that "[b]ecause ripeness falls under constitutional jurisdiction, not subject matter jurisdiction, the trial court erred in treating MCR 2.116(C)(4) as a proper ground for granting defendant summary disposition on the issue of ripeness.").

defendant's motion for summary disposition under subrule (C)(4) on ripeness grounds, this Court does not reverse in cases of such error when summary disposition is nonetheless appropriate under a different subrule. *Rental Properties Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 526-27; 866 NW2d 817 (2014) ("Even if the trial court erred by granting summary disposition under a particular subrule, this Court will not reverse if the error was harmless.") Because the trial court's dismissal of plaintiff's claims as unripe was appropriate under MCR 2.116(C)(10), any error in granting defendant's motion for summary disposition under a separate subrule was harmless.

Additionally, as plaintiff concedes, because the trial court considered evidence beyond the pleadings to decide defendant's motion, this Court must treat the trial court's decision with respect to subrule (C)(8) as though it were made only pursuant to subrule (C)(10). See *Sharp v City of Lansing*, 238 Mich App 515, 518; 606 NW2d 424 (1999). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court considers the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The same is considered to determine whether "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

III. ANALYSIS

Plaintiff argues that the trial court erred when it granted defendant's motion for summary disposition because:

(1) the trial court's conclusion that plaintiff's request for declaratory relief was not ripe was erroneous, as the parties' dispute over the interpretation of Paragraph 3 of the Agreement is clearly an existing and ongoing disagreement necessitating resolution,

(2) the trial court's conclusion that plaintiff's future damages, in the form of an inevitable bond payment shortfall, were only "hypothetical" in nature was factually unsupported and legally impermissible, and the conclusion that the contract claims were not ripe was based on this erroneous determination, and

(3) the trial court failed to recognize that defendant breached the contract when it declined to negotiate in good faith and committed an anticipatory breach when it argued it was not required to pay the amount of the bond shortfall.

We address each claim of error in turn.

A. DECLARATORY JUDGMENT

On appeal, plaintiff asserts that, because the parties disagree in their interpretation of Paragraph 3 of the Agreement, an actual controversy exists and plaintiff is entitled to a declaration of its legal rights under that contract provision. We disagree.

MCR 2.605 governs a trial court's power to enter a declaratory judgment. The court rule provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). The language in this rule is permissive, and the decision of whether to grant declaratory relief is within the trial court's sound discretion. *PT Today, Inc v Comm'r of Financial & Ins Services*, 270 Mich App 110, 126-127; 715 NW2d 398 (2006).

When there is no actual controversy, the court lacks jurisdiction to issue a declaratory judgment. *Citizens for Common Sense in Govt v Attorney Gen*, 243 Mich App 43, 56; 620 NW2d 546 (2000). Thus, "the existence of an 'actual controversy' is a condition precedent to the invocation of declaratory relief." *PT Today, Inc*, 270 Mich App at 127. An actual controversy exists when a declaratory judgment is necessary to guide the plaintiff's future conduct in order to preserve his legal rights. *Shavers v Kelley*, 402 Mich 554, 588-589; 267 NW2d 72 (1978). "It is not necessary that 'actual injuries or losses have occurred'; rather, 'plaintiffs plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised.' " *Kircher v City of Ypsilanti*, 269 Mich App 224, 227; 712 NW2d 738 (2005) quoting *Shavers*, 402 Mich at 589.

Plaintiff claims that a disagreement exists regarding the application of a provision in the Agreement obligating defendant to assist plaintiff in the form of non-tax payments in the event of a shortfall. The provision, Section 3 of the Agreement, reads as follows:

> [Defendant] acknowledges that [plaintiff] assisted [defendant] in the construction of the Village through the issuance by [plaintiff] of certain bonds supported by the full faith and credit of [plaintiff], the proceeds of which were used to help construct the Village. *To the extent that the property tax payments made by [defendant] to [plaintiff], including payments made by [defendant] to [plaintiff] pursuant to Section 2.2, are inadequate to permit [plaintiff] to meet its payment obligations with respect to that portion of the bonds that were used to help fund the Village, [defendant] hereby agrees to negotiate with [plaintiff] in good faith to determine the amount of the shortfall with respect to those bonds and make a non-tax payment, payment in-lieu-of tax, (PILOT) to [plaintiff] to assist [plaintiff] in making timely payments on the bonds.* [Emphasis added].

Plaintiff claims that the provision is ambiguous, and could be read to obligate defendant to begin negotiations prior to the occurrence of the shortfall. Plaintiff argues that it is entitled to "timely" payments, which it argues also, requires that defendant engage in negotiations prior to the shortfall, and suggests that the parties' intent should be considered. According to plaintiff, it would not have entered into an agreement through which it would need to wait for defendant's assistance until after the shortfall occurred, opening itself up to unforeseeable and catastrophic damages. However, we find that, while perhaps inartfully worded, this contract provision is unambiguous and plaintiff has failed to present an "actual case or controversy" necessitating declaratory relief.

"Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court." *Meagher v Wayne State Univ*, 222 Mich App 700,

721; 565 NW2d 401 (1997). "If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate." *Id*. at 722. "If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Id*. Clear and unambiguous contractual language must be enforced as written. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010). The judiciary is not authorized to rewrite contracts. This Court has repeatedly held that the straightforward language of a contract must control. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 52; 664 NW2d 776 (2003) ("The notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable."); *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002) ("The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.") (Quotation and citation omitted).

According to the plain language of the contract, defendant is obligated to "negotiate with [plaintiff] in good faith to determine the amount of the shortfall," only "[t]o the extent that the property tax payments made by [defendant]" are "inadequate to permit [plaintiff] to meet its payment obligations," and only "with respect to that portion of the bonds that were used to help fund the Village." Thereafter, defendant is obligated to "make a non-tax payment" in order to "assist" plaintiff in making "timely" payments on those bonds. In each case, the tense of the verb is present, not future. No reasonable person reading this provision could find it ambiguous, or find that defendant is obligated to engage in negotiations prior to the shortfall. Indeed, the contract admits of but one interpretation, in which the occurrence of the shortfall is a condition precedent to defendant's obligation to perform, and defendant is not obligated to do anything until after plaintiff has experienced a shortfall. In fact, defendant is not obligated to perform until after two conditions have been met: (1) a shortfall has occurred, and (2) property taxes paid by defendant are inadequate for plaintiff to pay that portion of the bonds that was used to fund the Village. This second condition cannot be met until *after* the shortfall has occurred and the parties have determined the amount due.

Contrary to plaintiff's assertion on appeal, the requirement that defendant negotiate in good faith to "determine the amount of the shortfall" does not force the implication that defendant must be required to negotiate prior to the occurrence of a shortfall. Plaintiff forgets that the provision contains qualifying language, requiring defendant to negotiate in good faith to determine the amount of the shortfall only "with respect to those bonds" that were "supported by the full faith and credit of [plaintiff], the proceeds of which were used to help construct the Village." Defendant is therefore clearly obligated to engage in negotiations once a shortfall occurs, to determine which part of the shortfall can be attributed to bonds it is obligated to assist plaintiff to pay.

It is true that this contract is not particularly strong, or overly beneficial to plaintiff. However, we do not create ambiguities to rewrite or rebalance the equities of a contract, especially where, as here, the contract was voluntarily drafted and entered into by consenting parties. As our Supreme Court has explained: "We reiterate that the judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to

enforce unambiguous contractual provisions." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). Nor do we, as plaintiff requests, look past the plain and unambiguous terms of a contract to impose an obligation on a party that has not been clearly delineated in the parties' agreement. "It is beyond doubt that the actual mental processes of the contracting parties are wholly irrelevant to the construction of contractual terms." *Zurich Ins Co v CCR and Co*, 226 Mich App 599, 604: 576 NW2d 392 (1997). "Rather, the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms." *Id*.

Finally, plaintiff's claim that it needs declaratory relief in order to preserve its legal rights under the contract is untenable, and its assertion that it will be unable to prevent damages without declaratory relief is irrelevant. Plaintiff's rights, like defendant's obligations, under the contract are clear. Defendant is not obligated to perform until after a shortfall, and then is only obligated to "assist" with a certain payment thereof. Plaintiff may take steps, as it should, to prevent loss and attempt to avoid excessive damage from the projected shortfall, and its remedy for any losses actually incurred lie in damages for breach of contract, if defendant fails to meet its obligations when the time for performance has arrived.

It is also worth noting that declaratory relief is not mandatory. Again, the statute governing declaratory relief is permissive. *PT Today, Inc*, 270 Mich App at 126. Even if plaintiff's claims had merit, the decision of whether to grant declaratory relief rests within the sound discretion of the trial court. The decision to decline to offer declaratory relief is within the range of reasonable outcomes. We find no error on appeal.

## B. HYPOTHETICAL DAMAGES

Plaintiff argues that, in light of the PFM Report drafter's conclusion that a bond payment shortfall is "inevitable," the trial court erred when it determined that plaintiff's damages were hypothetical in nature. Again, we disagree.

Damages are an element of a breach of contract claim and "[t]he party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). "[D]amages must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies." *Doe v Henry Ford Health System*, 308 Mich App 592, 602; 865 NW2d 915 (2014) (internal quotation and citation omitted). Although breach of contract damages need not be precisely established, "uncertainty as to the fact of the amount of damage caused by the breach of contract is fatal." *Home Ins Co v Commercial & Industrial Security Servs, Inc*, 57 Mich App 143, 147; 225 NW2d 716 (1974).

Plaintiff concedes that the amount of damages here is uncertain, but argues that the "unrebutted" PFM Report establishes that the occurrence of damages in the form of a bond payment shortfall is certain. It is true that where the fact of damages has been established and the only question to be decided is the amount, the certainty requirement is relaxed. *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 108; 535 NW2d 529 (1995). However, plaintiff is mistaken when it concludes that the fact of damages has been conclusively established. Although, as plaintiff notes, defendant has not provided any independent report or any document

specifically refuting the findings contained within the PFM Report, defendant was not required to do so, as the factual uncertainty of plaintiff's damages is apparent from the PFM Report itself. First, the PFM Report contains 15 different projections for a potential bond payment shortfall amount, many of which are predicted to occur in varying years. As the report drafter makes clear, these projections indicate that, "a cash shortfall is inevitable *if new revenues are not introduced*." The drafter also acknowledged that "[b]ecause of the unpredictable nature of Taxable Value growth rates it is not possible to project the exact moment of [plaintiff's] initial cash shortfall with precise accuracy," and that a shortfall is certain only "without a substantial increase in the captured taxes, or the influx of additional funds by 2017 or 2018." The very language of the report upon which plaintiff relies in making its claim for damages supports the fact that, at least at this point in time, plaintiff's alleged damages are conjectural, speculative, and clearly "dependent upon the chances of business or other contingencies." *Doe*, 308 Mich App at 601.

Plaintiff also argues that the trial court erred when it inappropriately made a "factual finding" regarding the hypothetical nature of plaintiff's bond payment shortfall, rather than accepting plaintiff's characterization of the shortfall as "certain," as plaintiff claims it was required to do when it decided defendant's motion for summary disposition under MCR 2.116(C)(10). Plaintiff is correct that, when deciding such a motion, the trial court is required to view the evidence in a light most favorable to the nonmoving party—here plaintiff. *Allison*, 481 Mich at 425. However, viewing the evidence in a light most favorable to plaintiff is not the same as accepting, verbatim, any assertion advanced by plaintiff in its pleadings. Indeed, the trial court is permitted to view all of the evidence, and is required only to view it in the light *most favorable* to plaintiff, not in a factually unsupported light in order to substantiate plaintiff's otherwise unsubstantiated claims. Here, the trial court did not "find" any facts not clearly contained within the parties' attachments to the pleadings. The hypothetical nature of plaintiff's claims was apparent after viewing plaintiff's own financial report, and even when viewed in the light most favorable to plaintiff, the projections of the PFM Report could not be interpreted to support the "certainty" of plaintiff's alleged future damages.

Plaintiff's damages are speculative because "they do not arise from [a] purported breach of contract but depend entirely on the occurrence of multiple contingencies which might or might not occur at some point in the future." *Doe*, 308 Mich App at 602. By way of example, we note that plaintiff has already successfully restructured its bond obligation in order to avoid a previously projected deficiency, and plaintiff admitted at the hearing on defendant's motion for summary disposition that it was in the process of obtaining another bond restructuring agreement. This admission alone illustrates the contingent nature of plaintiff's alleged damages. Any injury plaintiff might sustain from the projected bond payment shortfall is entirely contingent on the hypothetical possibilities that (1) plaintiff will have a constant revenue moving forward, (2) plaintiff will not be able to restructure its bond obligations to avoid injury, and (3) plaintiff will actually experience a bond payment shortfall. Because plaintiff's purported future damages arise from what plaintiff's own expert describes as a possible future harm that might not occur, plaintiff may not recover in contract law now for the hypothetical losses it may one day experience.

## C. BREACH OF CONTRACT CLAIMS NOT RIPE

Finally, plaintiff argues that the trial court erred in granting defendant's motion for summary disposition on plaintiff's breach of contract claims for lack of ripeness. The doctrine of ripeness is closely related to the standing doctrine in that it "focuses on the timing of the action." *Michigan Chiropractic Council v Commissioner of Office of Financial and Insurance Services*, 475 Mich 363, 379; 716 NW2d 561 (2006), overruled on other grounds by *Lansing Schools Educ Ass'n*, 487 Mich 349 (2010). The ripeness doctrine requires that a party has sustained an actual injury to bring a claim. *City of Huntington Woods v City of Detroit*, 279 Mich App 603, 615; 761 NW2d 127 (2008). A party may not premise an action on a hypothetical controversy. *Id.*

Plaintiff argues that it has proven injury in the form of a breach of contract because defendant has already (1) failed to negotiate in good faith, as required by Paragraph 3, and (2) anticipatorily repudiated its obligations under Paragraph 3 by unequivocally stating that it will not pay any part of the bond payment shortfall if it should occur. We disagree.

Michigan law requires a party claiming breach of contract to prove the terms of the contract, that the defendant breached the terms, and that the breach caused an injury. *Alan Custom Homes, Inc*, 256 Mich App at 512. Here, as previously discussed, the terms of the contract are unambiguous. Defendant is not obligated to engage in good faith negotiations to determine the amount of a bond payment shortfall it is required to pay until after the bond payment shortfall has occurred. At this time, the bond payment shortfall is still only a projection, and defendant could not have breached its contract by failing to perform before the time of performance has even arrived. Plaintiff's claim that defendant already breached the contract by failing to negotiate therefore fails. Without an actual injury resulting from a breach of contract, the trial court properly dismissed plaintiff's breach of contract claim as not ripe for adjudication.

Plaintiff's claim for breach of contract on the theory that defendant anticipatorily repudiated its obligation to pay any amount of the bond payment shortfall is similarly meritless. Under the doctrine of anticipatory repudiation: "[I]f, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Stoddard v Manufacturers Nat'l Bank*, 234 Mich App 140, 163; 593 NW2d 630 (1999). "In determining whether an anticipatory breach has occurred, it is the party's intention manifested by acts and words that is controlling, and not any secret intention that may be held." *Paul v Bogle*, 193 Mich App 479, 493-494; 484 NW2d 728 (1992), citing *Carpenter v Smith*, 147 Mich App 560, 565; 383 NW2d 248 (1985).

In this case, even when considered in a light most favorable to plaintiff, the evidence does not show that defendant ever unequivocally declared its intention not to perform under Paragraph 3 of the Agreement when the time of performance actually arrives. Despite plaintiff's argument to the contrary, none of the evidence it points to on appeal proves that defendant is unwilling to negotiate or to pay *any* amount of the bond payment shortfall. Defendant simply maintains its position that it is not obligated to negotiate until after the shortfall has occurred, that it is not required to pay any amount of the bond payment shortfall until after it has occurred, and that it is not required under Paragraph 3, in any case, to pay the full amount of the bond payment shortfall as claimed by plaintiff's projections. Defendant's position is best illustrated in its counsel's statements at the hearing on defendant's motion for summary disposition:

[*The Court*]:  Is the defense's – one of defense's positions, that they have no liability to pay anything towards a certain shortfall?

[*Counsel for Defendant*]:  It's our position that we have a duty, if there is a shortfall to negotiate in good faith the amount.  And then to make a non-tax payment, payment in lieu of tax to [plaintiff] to assist [plaintiff].  That's our position.

It's our view as the defense, that those words mean very little, if anything would be due.  But we view our duty and obligations what [sic] stated in that paragraph.

It is clear that while defendant disputes the amount due at this time, and asserts that its liability in the event of a shortfall may be minimal, it has not unequivocally repudiated its obligation to pay any amount of the bond payment shortfall as required by Paragraph 3 of the Agreement.  Thus, even when the evidence is viewed in a light most favorable to plaintiff, it does not support plaintiff's claim for anticipatory repudiation of the Agreement, and summary disposition under MCR 2.116(C)(10) for lack of a ripe controversy is therefore appropriate with regard to both of plaintiff's breach of contract claims.

The trial court did not err when it granted defendant's motion for summary disposition on the ground that plaintiff's breach of contract and declaratory judgment claims were not yet ripe for adjudication, and reversal is not required.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Henry William Saad
/s/ Patrick M. Meter