NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0160n.06

No. 19-1921

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Mar 16, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HALPERN 2012, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CITY OF CENTER LINE, MICHIGAN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE: GIBBONS, McKEAGUE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiff Halpern 2012, LLC ("Halpern") brought this action against the City of Center Line, Michigan ("Center Line"), challenging the constitutionality of its Property Management Ordinance's ("PMO") rental-property inspection procedures as lacking either a warrant requirement or an opportunity for pre-compliance review. While this lawsuit was pending, Center Line amended the PMO to correct the alleged deficiencies. Center Line moved for summary judgment, and the district court granted the motion except as to Halpern's claim for declaratory relief under the Fourth Amendment. The district court denied Halpern's request for injunctive relief as well as its request for damages under 42 U.S.C. § 1983 and restitution under its unjust-enrichment claim. Halpern appeals the damages and unjust enrichment holdings. Because Halpern has failed to establish that Center Line's constitutional violation caused it to pay the fees it seeks to recoup or that Center Line's retention of the fees is unjust, we **AFFIRM**.

**BACKGROUND**

**I.      Center Line's Property Management Ordinance**

Halpern is a Michigan limited liability company whose sole member is David Halpern, an Israeli citizen living outside the U.S.     Halpern's resident agent is Garner Properties & Management, LLC, which is owned and operated by Christopher Garner ("Garner").   Halpern owns a single-family rental home at 8424 Harding in Center Line ("the property"), and contracted with Garner Properties to manage it.

Center Line is one of many municipalities that have adopted the International Property Maintenance Code of 2009.   Center Line's code includes a Property Management Ordinance ("PMO") that regulates the rental of non-owner-occupied properties.   Section 14-215 of the PMO states that the owner of a property may not rent the property unless the owner has been issued a certificate of compliance certifying that the property meets Center Line's maintenance and habitability requirements.   Properties are inspected and certified biennially.   If a property is inspected and found to violate one or more provisions of the local code, Center Line must send a letter to the property owner explaining the basis of noncompliance and setting a deadline for required repairs or alterations.

In 2017, Section 14-220 of the PMO stated as follows regarding inspections:

(a) The city building department or its designated agent shall conduct all inspections required under this article at a reasonable time.  The inspection of any residential building or residential dwelling unit shall be done during daylight hours only, except by consent of the owner or occupant to the contrary. . . .
(b) Upon refusal of a tenant, occupant or owner to consent to the inspection required under this article, the city building department shall issue a letter of inspection; and such letter shall state that the reason for the issuance thereof is the refusal to allow the inspection. The owner or occupant then has 30 days from the date of the issuance of the letter of inspection to allow inspection of the property or a violation will be issued.

CENTER LINE, MICH., CODE OF ORDINANCES ("PMO"), art. VIII, § 14-220 (2017). The 2017 PMO also criminalized interference with inspections:

> Any person or persons who shall refuse to comply with or who shall assist in the violation of any of the provisions of this article, or who, in any manner hinders, obstructs, delays, resists, prevents or in any manner interferes with the inspection personnel of the department in the performance of any duty herein imposed, or shall refuse to permit such inspectors to perform their duty by refusing them entrance at reasonable hours to buildings or places for the purpose of enforcement of this article, shall be subject to the fines and penalties herein provided.

*Id.* art. VII, § 14-195. The penalty was a maximum fine of $500 and/or imprisonment of not more than 90 days. *Id.* § 14-194(6).

Section 14-221 imposed penalties on property owners for failure to obtain a certificate of compliance:

> (a) The owner of any non-owner occupied commercial, industrial, or residential building or residential dwelling unit who shall fail to register the building or unit in accordance with section 14-217 or who shall fail to obtain a certificate of compliance in accordance with section 14-214 shall be guilty of a misdemeanor.
> (b) Any owner who fails to comply with any of the other requirements of this article shall be guilty of a misdemeanor.

*Id.* art. VIII, § 14-221.

The PMO made payment of registration and inspection fees prerequisites to obtaining the required certifications. It required registration fees to be paid before a registration certificate was issued and required inspection fees to be paid by March 31 of each inspection year.

Garner testified regarding how Garner Properties managed compliance with these provisions. He stated that after Garner Properties received a call from Center Line stating that it intended to inspect a rental property, Garner would notify the tenant that the tenant or a representative needed to be present on the day of the scheduled inspection. Tenants were not given a choice whether to consent.

Garner Properties registered the Harding property as a rental in March 2017. On March 10, Garner Properties paid Halpern's fee of $175 to Center Line.[1] Center Line completed an inspection and sent a letter to Garner Properties on April 10, explaining that the property violated Center Line's code and specifying several required repairs. Center Line gave Garner Properties until May 10 to complete the repairs. Garner Properties did not make the repairs by that deadline and, on May 11, Center Line sent another letter to Garner Properties stating that it was in violation of § 14-215 because it was renting the Harding property without a certificate of compliance. Garner then requested a 45-day extension to complete the repairs. On August 5, Center Line again wrote Garner Properties asking to schedule a second inspection and reiterating that renting the Harding property without a certificate of compliance violated § 14-215.

On September 13, 2017, Center Line issued a citation to Halpern for renting the property without a certificate of compliance in violation of § 14-215 of the PMO. Garner testified that he understood why the ticket had been issued and that he had been unable to schedule the needed repairs with the property's tenant within Center Line's time frame. For reasons not reflected in the record, Center Line dismissed the citation in October 2017. Center Line eventually re-inspected the property and issued Halpern a certificate of compliance.

## II. Procedural History

Halpern brought this action against Center Line in June 2018, alleging that the ordinance interfered with its property interest, in violation of the Due Process Clause of the Fourteenth Amendment (Count I), and that it permitted warrantless searches in violation of the Fourth Amendment (Count II). Halpern separately alleged a violation of 42 U.S.C. § 1983 (Count VI). Halpern also brought claims for assumpsit (Count III), injunctive relief (Count IV), and declaratory

---

[1] It is not clear from the receipt in the record whether that payment was for a registration fee or an inspection fee.

relief (Count V).  Halpern later moved to amend Count III to clarify that it sought restitution under a theory of unjust enrichment.[2]  Center Line moved for summary judgment on all claims.

The court granted summary judgment to Center Line on Halpern's Fourteenth Amendment claim because it was based on the same government action underlying its Fourth Amendment claim—the authorization of warrantless searches.  The court explained that because "[s]ubstantive due process protects only against state action that is not otherwise proscribed by the plain text of other constitutional amendments," a substantive due process claim was unavailable to Halpern. (R. 28, p. 15 (citing *Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006); *Graham v. Connor*, 490 U.S. 386, 395 (1989); *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)).)

Relying on *City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015), the district court held that § 14-220 of the prior PMO violated the Fourth Amendment on its face.[3]  In *Patel*, the Court held that in the absence of a warrant, the subjects of administrative searches must be given an opportunity for neutral pre-compliance review before being subjected to penalties.  135 S. Ct. at 2452-53.  Because § 14-220 of the prior PMO failed to provide an opportunity for pre-compliance review, the district court found that Halpern was entitled to a partial judgment declaring it unconstitutional.  However, because  Center Line had already amended the ordinance to correct the constitutional deficiency,  the district court denied injunctive relief.

---

[2] Assumpsit has been abolished as an independent cause of action in Michigan.  *See Fisher Sand & Gravel Co. v. Neal A. Sweebe, Inc.*, 837 N.W.2d 244, 256-57 (Mich. 2013).

[3] The district court rejected Center Line's argument that Halpern lacked standing to assert a Fourth Amendment challenge to the PMO.  The district court correctly distinguished *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544-45 (6th Cir. 2003), where we held that a rental-property owner lacked standing to assert a Fourth Amendment challenge to a warrantless search of tenant-occupied property, because Halpern challenges a rental-property ordinance rather than a specific search of tenant-occupied property.  Likewise, the district court correctly explained that our holding in *Vonderhaar v. Village of Evendale,* 906 F.3d 397, 401-02 (6th Cir. 2018), does not preclude Halpern from demonstrating an imminent threat of injury because unlike the inspection ordinance at issue in *Vonderhaar*, Center Line's prior PMO did not include language limiting the city's remedies to those "provided by law."  (R. 28, p. 10 (quoting 906 F.3d at 401).)

Halpern argued that it was entitled to damages under § 1983 for all registration and inspection fees it paid under the prior ordinance. The district court denied Halpern's claim, finding that Halpern had not shown a causal connection between the absence of pre-compliance review and the fees paid. The court explained that municipalities are entitled to collect reasonable registration and inspection fees associated with certificates of compliance for rental properties and found that Center Line could properly collect fees without regard to the absence of pre-compliance review. Finally, the court found that Halpern was not entitled to restitution under an unjust-enrichment claim because it had not shown that inequity resulted from paying the otherwise-lawful registration and inspection fees.

Halpern appeals the district court's denial of damages and restitution.

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party. *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## DISCUSSION

### I. Section 1983 Damages

The parties do not dispute the facts, nor do they dispute that § 14-220 of the prior PMO was facially unconstitutional insofar as it failed to require a warrant procedure or provide an opportunity for pre-compliance review.[4] Accordingly, the only issue on appeal is whether the district court properly denied Halpern's claims for damages and restitution. It did.

---

[4] We note that in the wake of *Patel*, several district courts in this circuit have considered challenges to similar inspection ordinances that failed to establish warrant procedures or provide an opportunity for pre-compliance review.

As the district court correctly explained, a § 1983 plaintiff must establish a causal connection between the constitutional violation and the relief sought. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). In determining whether a plaintiff has met this burden, we rely on "[t]raditional tort concepts of causation." *Id.* (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005)). Accordingly, Halpern must show that Center Line's adoption and/or implementation of the unconstitutional section of the prior PMO was the cause in fact and proximate cause of its fee payments. "Conduct is the cause in fact of a particular result if the result would not have occurred but for the conduct." *Id.* (quoting *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992)).

Halpern has not shown that Center Line's adoption or implementation of the unconstitutional section of the prior PMO caused it to pay registration or inspection fees. To the contrary, nothing in Halpern's argument or in the record suggests that if Center Line had provided an opportunity for pre-compliance review or required a warrant at the time Halpern's property was registered as a rental and an inspection was scheduled, Halpern would not have paid the required fees. Notably, in *MS Rentals, LLC v. City of Detroit*—a similar case brought by Garner Properties—the district court denied a refund of inspection fees for the same reason, concluding that "the lack of pre-compliance review affected only the propriety of the inspection ordinance." 362 F. Supp. 3d 404, 419 (E.D. Mich. 2019).

---

Those courts have consistently found for the plaintiffs on their Fourth Amendment claims. *See, e.g.*, *Garner Properties & Mgmt. v. Charter Township of Redford*, No. 15-14100, 2017 WL 3412080, at *10-*13 (E.D. Mich. Aug. 8, 2017) (denying summary judgment to city on plaintiff's Fourth Amendment claim because inspection ordinance failed to provide opportunity for pre-compliance review); *Landon v. City of Flint*, No. 16-11061, 2016 WL 7661390, at *4-*6 (E.D. Mich. Nov. 30, 2016) (recommending granting preliminary injunction where inspection ordinance lacked opportunity for pre-compliance review), *report and recommendation adopted*, 2017 WL 345854, at *2-*3 (E.D. Mich. Jan. 24, 2017); *Baker v. City of Portsmouth*, No. 1:14cv5l2, 2015 WL 5822659, at *5-*7 (S.D. Ohio Oct. 1, 2015) (granting summary judgment for plaintiffs on Fourth Amendment claim); *MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 416-17 (E.D. Mich. 2019) (granting partial summary judgment for plaintiffs declaring that inspection ordinance violated Fourth Amendment).

Of course, causation would be established if the registration and inspection fees were themselves unconstitutional; but they are not. Center Line's rental-property registration and inspection requirements are reasonable means of advancing its governmental interests in public safety and welfare, and it may impose reasonable fees to offset the costs of advancing those interests. *Harris v. Akron Dep't of Public Health*, 10 F. App'x 316, 319-20 (6th Cir. 2001); *see also Camara v. Municipal Court*, 387 U.S. 523, 535 (1967) (recognizing that "numerous courts have upheld the police power of municipalities to impose and enforce . . . minimum standards even upon existing structures"); *Kircher v. City of Ypsilanti*, 712 N.W.2d 738, 744 (Mich. Ct. App. 2005) (holding that municipal fees are presumed reasonable unless "wholly out of proportion to the expense involved").

Instead of directly addressing the causation question, Halpern asserts that since the fee requirements fell under the same "ordinance scheme" as § 14-220, they must be invalid. (Appellant's Br. at 22-23, 25-26.) Halpern relies on *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990), and *Carpenter v. Shaw*, 280 U.S. 363 (1930). In *McKesson*, the plaintiff paid excess taxes to the State of Florida under a scheme that favored distributors of local products, thereby discriminating against interstate commerce in violation of the Commerce Clause. 496 U.S. at 22. The Court held that "the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief," which could include a refund to the plaintiff in the amount it had overpaid under the discriminatory provisions or, alternatively, collection of back taxes from the plaintiff's competitors. *Id.* at 31, 40. Similarly, in *Carpenter*, the plaintiffs paid land taxes under duress but argued that the underlying tax did not apply to them because of their membership in the Choctaw tribe. 280 U.S. at 365. The

Court agreed and held that the plaintiffs were entitled under the Fourteenth Amendment to recover the taxes they had paid under duress. *Id.* at 369.

According to Halpern, *McKesson* and *Carpenter* establish that Center Line must refund the fees Halpern paid to the city when the unconstitutional section of the PMO was in effect. We disagree. As the district court in *MS Rentals* explained in rejecting the same argument, those cases "involved refunding payments where the underlying tax or assessment scheme was deemed unlawful." 362 F. Supp. 3d at 419. As discussed above, the underlying fees in this case were not unlawful. Indeed, *McKesson* highlights the shortcomings of Halpern's claim for damages because, unlike the plaintiff in that case, Halpern cannot demonstrate a difference between what it actually paid the city and what it would have paid had the PMO been constitutional from the start. *See McKesson*, 496 U.S. at 40.

Halpern next argues that because its fee payments to Center Line for the Harding property were "involuntary," they must be refunded. (Appellant's Br. at 23-25.) Halpern cites two Michigan Supreme Court cases in support. In *Theatre Control Corp. v. City of Detroit*, the city charged residents for using air conditioners that failed to recirculate water. 370 Mich. 382, 385 (1963). After finding the charge unreasonable and arbitrary, the court rejected the city's argument that a refund of the charges was unwarranted because the charges had been paid voluntarily. *Id.* at 386-87. The court found that because the plaintiffs would have had their water shut off had they not paid the charges, their payments were involuntary. *Id.* Similarly, in *Beachlawn Building Corp. v. City of St. Clair Shores*, the court found that the defendant had charged the plaintiff an excessive building fee and that the payment was involuntary because the plaintiff had to choose between paying it or closing its business. 370 Mich. 128, 133 (1963). The court remanded to the trial court to determine the appropriate award of damages. *Id.* at 134.

9

Halpern's reliance on *Theatre Control Corp.* and *Beachlawn* is misplaced.  It is true that Center Line requires fee payments before properties may be rented and, in that sense, the fees are not voluntary for rental-property owners.  But that is where the similarity ends.  *Theatre Control Corp.* and *Beachlawn* involved fees that were both involuntarily paid *and unlawful*.  *See Theatre Control Corp.*, 370 Mich. at 387-88; *Beachlawn*, 370 Mich. at 133.  Because the underlying registration and inspection fees paid by Halpern were legal, *Theatre Control Corp.* and *Beachlawn* are inapposite.

Halpern develops an additional argument in its reply brief: that the section of the pre-amendment PMO governing fees was unconstitutional because it was inseparable from the section establishing inspection procedures.  It claims this is so because "[t]he payment is a condition precedent to scheduling the unconstitutional inspection."  (Reply Br. at 1.)  As an initial matter, it is not clear that payment actually is a condition precedent to inspections being scheduled; the PMO states only that the fee "shall be paid before a certificate of compliance is issued."  PMO art. VIII, § 14-218(c).  But even if payment of an inspection fee is a condition precedent to an inspection occurring, Halpern fails to adequately explain why the fee requirement is dependent on or inseparable from the unconstitutional provision governing inspection procedures.  Moreover, that Center Line amended the section governing inspection procedures without changing the fee requirements demonstrates that those portions of the ordinance are separable.  Where one part of a statute is constitutional and the another is unconstitutional, and those "parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected."  *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985).  Accordingly, Halpern's argument fails.

## II.       Unjust Enrichment

In Michigan, a claim of unjust enrichment requires a showing of: "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barver v. SMH (US), Inc.*, 509 N.W.2d 791, 797 (Mich. Ct. App. 1993) (citing *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991)).  The decision to grant equitable relief in the form of restitution is in the discretion of the court.  *Van Etten v. Mfrs. Nat'l Bank*, 326 N.W.2d 479, 484 (Mich. Ct. App. 1982).

Halpern argues that it is entitled to restitution because "it was 'inequitable' for [Center Line] to collect inspection fees under threat of an unconstitutional search of plaintiff's property." (Appellant's Br. at 29.)   Halpern relies on two Michigan Supreme Court cases for support.  In *Tkachik v. Mandeville*, the court held that the plaintiff—a personal representative of an estate— was entitled to contributions from the co-owner of two properties for property expenses paid by the decedent before her death.  790 N.W.2d 260, 267 (Mich. 2010).  The decedent and defendant were married and owned two properties as tenants by the entirety, causing the decedent's interest in the properties to pass to the defendant husband upon the decedent's death.  *Id.* at 263.  In the years preceding his wife's death, the defendant was completely absent, leaving his terminally ill wife to pay taxes, mortgages, and insurance on the properties.  *Id.*  The decedent's representative argued that the husband was responsible for his share of the expense of maintaining the properties in his absence.  *Id.* at 264.  The probate court and court of appeals held that the "defendant had not been unjustly enriched because he had only received 'that which was given to him by operation of law.'"  *Id.* (quoting *Tkachik v. Mandeville*, 764 N.W.2d 318, 324 (Mich. Ct. App. 2009)).  The Michigan Supreme Court reversed, finding that principles of equity required the defendant to pay

11

his share of the property maintenance cost. *Id.* at 267. In so holding, the court noted that "a finding of unjust enrichment requires the consideration of both legal *and* equitable factors." *Id.* at 266.

Halpern also relies on *Wright v. Genesee County*, where the plaintiff brought an unjust-enrichment claim against his employer after it overcharged him for health-insurance premiums, thereby enriching itself at his expense. 934 N.W.2d 805, 808 (Mich. 2019). The issue before the Michigan Supreme Court was limited to whether the State's governmental tort liability act barred the plaintiff's unjust-enrichment claim. *Id.* at 807. The court held that the act did not bar an unjust-enrichment claim because the remedy for unjust enrichment is restitution, not damages. *Id.* at 812. The court explained that unjust enrichment seeks "to correct against one party's retention of a benefit at another's expense. And the correction, or remedy, is therefore not compensatory damages, but restitution. Restitution restores a party who yielded excessive and unjust benefits to his or her rightful position." *Id.* at 810 (citing Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011)).

Halpern seems to rely on *Tkachik* and *Wright* for the proposition that principles of equity may require Center Line to return the inspection fee notwithstanding that it is otherwise legally entitled to collect that fee to offset the cost of inspections. Although Halpern is correct that the legality of the fees does not *preclude* a finding of unjust enrichment, Halpern has not adequately explained why principles of justice and equity entitle it to restitution in this case. Assuming that the fee payments are properly considered a "benefit," Center Line used the fees to pay for its inspections of the Harding property. Unlike in *Tkachik* and *Wright*, there is no indication that the fees were excessive, used for anything other than their stated purpose, or obtained unfairly. To the contrary, the record shows that Garner Properties paid the fee without objection and then scheduled an initial inspection of the Harding property.

Accordingly, Halpern's argument regarding unjust enrichment rests on the premise that the unconstitutionality of the prior PMO's inspection procedures by itself rendered the fee payment inequitable. The district court here is not alone in rejecting that argument. Other district courts applying Michigan law in factually similar cases have rejected that argument. In *Investment Realty Services, LLC v. City of Allen Park*, the plaintiff paid an inspection fee under an ordinance that was unconstitutional for failure to provide for pre-compliance review. No. 18-11476, 2020 WL 230272, at *7 (E.D. Mich. Jan. 15, 2020). The district court denied the plaintiff's claim for unjust enrichment, finding that because the plaintiff would have paid an inspection fee even with an opportunity for pre-compliance review and because the fee the plaintiff paid did in fact pay for an inspection, there was no inequity. *Id.* at *8; *see also Flynn v. City of Lincoln Park*, No. 2:18-cv-12187, 2020 WL 344854, at *11 (E.D. Mich. Jan. 21, 2020) (finding plaintiffs' unjust enrichment claim seeking restitution of inspection fees meritless where plaintiffs were legally required to pay inspection fees to ensure habitability of rental property).

We find the district courts' reasoning in these cases persuasive. As discussed above, Halpern paid fees that Center Line was legally entitled to require in the public interest. The fee was used to cover the costs of the inspection of the Harding property, and would have been paid without regard to the failure to provide for pre-compliance review. Although the fee requirement was tangentially related to the unconstitutional portion of the former PMO, that alone does not render the city's retention of the fees inequitable or unjust.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of damages and restitution to Halpern.